[Civ. No. 15756.  First Dist., Div. One.  Oct. 19, 1953.]

RAYMOND VINCENT TATE, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

Roos & Jennings for Petitioner.

T. Groezinger and Keith, Creede & Sedgwick for Respondents.

PETERS, P. J.—Petition for a writ of review.

The commission denied a death benefit to the minor son of Ernest Tate who was killed while operating a company car

on company business, on the ground that the employee was intoxicated at the time of the accident. Thereafter, the commission granted a rehearing. On rehearing it developed that the district manager of the employer not only knew that Tate was drinking, but participated with Tate in the drinking and purchased at least one round of drinks. The commission again denied the death benefit, and failed and refused to pass upon the question as to whether, under such circumstances, the employer was estopped to raise the defense of intoxication. The precise question that is presented is whether there is sufficient evidence that would have supported a finding of estoppel. If so, the commission should have found on such issue.

The facts, in more detail, are as follows:

Ernest Tate was employed as a janitor and supervising employee by the American Building Maintenance Company, a self-insured employer. He was furnished a company car and had an assistant, Deardorff by name. It was admittedly part of Tate's duties to drive the assistant to San Francisco after finishing his janitorial tasks in Marin County. While doing so, and admittedly while working in the course of his employment, at about 3 a.m. on October 7, 1950, Tate wrecked the car and was killed. His infant son, in due course, instituted this proceeding to recover a death benefit. The employer raised the affirmative defense that death was caused by the intoxication of Tate. Hearings were held in December, 1950, and January, 1951. The evidence then disclosed that on the night in question Tate and his assistant had worked in various places in Marin County; that they were on their way home in the company car, with Tate driving, when Tate was observed to be driving most erratically, weaving in and out and crossing to the wrong side of the highway; that Tate cut in front of another car, hit it, and ran into the retaining wall on one of the approaches to the Golden Gate Bridge and was killed. A toxicologist testified that an autopsy disclosed that the alcoholic content of Tate's brain and blood disclosed that he recently had consumed eight to ten drinks of whiskey or beer, enough to make him intoxicated.

Max Allison, called by the petitioner under section 2055 of the Code of Civil Procedure, testified that during all times here relevant he was district manager of the employer in charge of all work in Marin County; that on the night in question Tate and his assistant Deardorff were required to work under his supervision in various buildings in and about

San Rafael; that he saw Tate and his assistant several different times that night, the last time at about 2:30 a.m. when Tate and Deardorff called at Allison's home to deposit some equipment; that Tate then appeared to have "had a few," but did not appear drunk. At this hearing this witness failed to mention that he had visited several bars with both employees, and bought at least one round of drinks.

Deardorff, the helper, merely testified that he was with Tate upon the fatal night and was being driven to San Francisco at the time of the accident. He did not even refer to the subject of drinking.

On this evidence the commission found that "The injury . . . was proximately and solely caused by the intoxication of the decedent." It held that the applicant was entitled to no relief.

The applicant, within the time prescribed by law, petitioned for a rehearing upon the grounds that the commission had acted in excess of its powers and contrary to the evidence. The commission, over the adverse report of its referee, granted a rehearing upon the ground that: "The record is convincing that further investigation is indicated. It is apparent that all evidence available upon the issues presented was not adduced for the consideration of the Commission." Evidence on the rehearing was taken in May of 1951. The rehearing referee considered that the evidence on the prior hearing was before him, and took additional evidence. Deardorff testified that all he could remember was driving away from a bar in Marin County, the Drake Bowl, about 1:30 or 1:45 a.m. He could not remember any of the facts preceding the accident. But he did testify that the last place he and Tate had worked was the Food Bank, and that from there they went to the Drake Bowl, a bar, about a quarter of one, and stayed there for an hour, while he, the witness, consumed about six or seven highballs and Tate had four or five beers. He testified about the three or four jobs performed by him and Tate that evening, about Allison's visits, and claimed that, until the visit to the Drake Bowl, neither employee had had a drink. But he did testify that Allison was present at the Drake Bowl and participated in the drinking. While he did not remember who bought the drinks, he guessed "we all bought one or a couple of rounds apiece," probably alternately, according to custom. This witness could remember nothing further after leaving the Drake Bowl, not even stopping at Allison's to leave off the tools. Deardorff admitted that he had been instructed not

to talk to applicant's counsel by counsel for the employer, and the employer's counsel stipulated that he had so advised Deardorff.

Max Allison also testified on the rehearing, again under section 2055 of the Code of Civil Procedure, and for the first time conceded that he had participated in the drinking activities of that evening. He testified that Tate and Deardorff were assigned to various jobs by him about 8 p.m.; that he went to a football game and later called on the two employees while they were working at a real estate office; that the men finished their work at this office about 10:30 p. m.; that he wanted to collect a bill owed to the employer by the Drake Bowl; that he "invited" the two employees to come with him to watch him collect the bill; that the manager of the Drake Bowl was busy and the three men sat down and had a drink. He testified that Tate had only the proverbial two beers, and that he, Allison, paid for one round of the drinks. Deardorff was drinking mixed drinks. Allison then stated that he left the two men and went home. Tate and Deardorff then continued in their employment. About 1:20 a.m. Allison again visited the two men, this time at the Food Bank, to observe their work, and stayed with them until they finished this job, their last, at about 1:40 a. m. According to Allison, the three men then visited Bob's Tavern and stayed there until sometime after 2 a. m. Deardorff did not mention this bar. Before entering this bar Allison had told his two employees that he was broke, whereupon Tate invited him to be his guest at the tavern. There, according to Allison, he and Tate had a "couple" more beers. When the bar closed, the three then went to Allison's home nearby where Tate put back the tools he had taken earlier in the evening. Tate then made a telephone call and he and Deardorff left Allison's home for San Francisco at 2:30 a. m. Allison stated he did not believe that Tate was then drunk, or he would not have allowed him to leave. Allison also stated that Tate had worked for this same employer for seven or eight years; that about three or four months before the accident Tate had been warned about four to six times about drinking on the job. But Allison admitted that, although there was a company policy against the men drinking on the job which both he and Tate knew, he did not forbid Tate to drink on the night in question, but in fact had accompanied him in this activity and even bought him a drink.

During the taking of evidence on rehearing no direct refer-

ence to the doctrine of estoppel was made, but in the briefs subsequently filed it was urged that Tate's drinking was with the consent, knowledge and approval of the employer, that such was the proximate cause of the accident, and estopped the employer from urging intoxication as a defense.

On the rehearing, the referee's report referred only to the evidence of intoxication and urged a denial of that application on the ground that the evidence on this issue was substantially similar to that on the original hearing. Based on this report, the commission again found that intoxication was the cause of the accident, adopted the original findings, and denied recovery. This decision was rendered February 10, 1953, some eighteen and a half months from the date the last brief had been filed on the rehearing. No explanation of what caused this extraordinary delay appears in the record.

On February 17, 1953, the applicant filed with the commission a document entitl~d "Petition for Reconsideration." The applicant stated that he knew that he had the legal right to petition but once for a rehearing, which right he had exhausted, but contended that the commission had jurisdiction on its own motion to correct its findings and order where it had failed to find on a material issue, and urged that here prejudicial error had been committed by the failure of the commission to find upon the material issue of estoppel of the employer to urge intoxication. The employer moved to strike this petition, and also urged that a finding on that issue was not required.

Before this second petition was acted upon, and within the time provided by law, the applicant filed the petition for a writ of review here under consideration. Thereafter, the referee of the commission filed a report in reference to the petition for reconsideration. In this report the facts and proceedings are reviewed, and then the referee concludes that "At no time was the estoppel of the employer to plead the defense of intoxication made an issue in the instant case." The estoppel issue, it was stated, was first made in applicant's brief "after rehearing." The referee then stated that section 5904 of the Labor Code results in a waiver of all points not raised in the petition for rehearing. Based on this reasoning, the referee refused to pass upon the merits of the estoppel claim because the evidence to support it came in "too late." The referee concluded: "The contention that the employer should be held to be estopped from pleading the defense of intoxication of the employee as the cause of

injury was not overlooked, but a finding with respect to it was not considered proper or necessary because this contention had not been raised at the original proceeding or in the Petition for Rehearing."

The commission thereafter made its formal order dismissing the petition for reconsideration, first, because it was an improper second petition for rehearing, and secondly, because the estoppel point "had not in the original proceeding or in the previous Petition for Rehearing been presented to the Commission for decision." `

The position then taken by the referee and the commission that the estoppel point was not properly before the commission on the rehearing because not urged in the petition for rehearing is not seriously now urged. There can be no doubt that such issue was then properly before the commission. The petition was granted by a general order without limitation. In such a situation the case is again before the commission on all of the issues, and the commission is under a duty to consider "all of the facts." (Lab. Code, § 5908.) The applicant did not know of Allison's participation in the drinking preceding the accident at the time of the original hearing, the witnesses having been instructed not to talk to applicant's counsel, and so did not know of it at the time the petition for rehearing was filed. This evidence first came into the case when Allison and Deardorff were called as adverse witnesses on the rehearing. Petitioner then immediately raised the issue in his briefs. ■ While section 5904 of the Labor Code provides that the petitioner for a rehearing "shall be deemed to have finally waived" all the points not "set forth in the petition for reconsideration," that simply means that the petitioner cannot raise points on petition for a writ of review not raised before the commission. But when a rehearing is granted, the case is wide open again and the petitioner properly may raise any point that he could have raised on the original hearing. (*Great Western Power Co.* v. *Industrial Acc. Com.*, 191 Cal. 724 [218 P. 1009], 196 Cal. 593 [238 P. 662]; *Pacific Emp. Ins. Co.* v. *Industrial Acc. Com.*, 58 Cal.App.2d 262 [136 P.2d 633]; Hanna, Industrial Accident Commission Practice and Procedure, pp. 229 and 235.) ■ Thus, the real question presented is whether there was any evidence that would have supported an estoppel finding. If so, it was error, and prejudicial error, not to have found on such material issue. (*Pierson* v. *Industrial Acc. Com.*, 98

Cal.App.2d 598 [220 P.2d 794].) ■ Whether an estoppel did or did not exist was, of course, a question of fact and not of law. (*Industrial Indem. Co.* v. *Industrial Acc. Com.*, 115 Cal.App.2d 684 [252 P.2d 649].)

Petitioner in the present proceeding concedes that the evidence supports the finding of intoxication. Section 3600 of the Labor Code provides that an employer, regardless of negligence, shall be liable for compensation for injury "sustained by his employees arising out of and in the course of the employment and for the death of any employee if the injury proximately causes death, in those cases where the following conditions of compensation concur: . . .

"(d) Where the injury is not caused by the intoxication of the injured employee." Under section 5705 intoxication is made an affirmative defense, the burden being placed upon the employer to prove it.

■ There can be no doubt that this section denies recovery to the injured employee, or to his family, where the employee is killed, where the injury or death is caused by the voluntary intoxication of the employee. But the employer may, in a proper case, be estopped from asserting what otherwise would be a complete defense. Thus, the employer may be estopped by his actions from relying upon the statute of limitations. (*Industrial Indem. Co.* v. *Industrial Acc. Com.*, 115 Cal.App.2d 684 [252 P.2d 649]; *Benner* v. *Industrial Acc. Com.*, 26 Cal.2d 346 [159 P.2d 24].) Where the facts warrant it, the same doctrine is applicable to the defense of intoxication. (See, generally, *Satchell* v. *Industrial Acc. Com.*, 94 Cal.App.2d 473 [210 P.2d 867].)

■ An employer is required by section 6400 of the Labor Code to furnish "employment and a place of employment which are safe for the employees," while section 6402 provides that: "No employer shall require, or permit any employee to go or be in any employment or place of employment which is not safe." Under these sections, if an employer in a factory offered drinks to and encouraged his employee to drink so that the employee got drunk, and then the employer ordered the employee to operate complicated machinery, and the employee was hurt, it would be perfectly obvious that the employer, by his actions, would and should be estopped to rely upon the defense of intoxication. ■ Here the evidence most favorable to the petitioner shows that Allison asked the two men, including Tate, to accompany him to the Drake Bowl to watch him collect a bill, an invitation

that hints, at least, at official duty. Then, knowing Tate's past weaknesses in reference to liquor, Allison, during working hours, purchased a round of drinks and participated in at least another round. Then, knowing that Tate had to drive on a main highway back to San Francisco, he again visited another bar with his two employees and again participated with them in at least several more rounds of drinks. Deardorff became so drunk that he has no recollection of any of the events after he and Tate left the bar to drive to Allison's home. Tate consumed so many drinks that shortly after leaving Allison's home he was driving most erratically and could not control the automobile. The quantity of alcohol in his blood and brain demonstrated that he was then intoxicated. Obviously, it is a possible and reasonable inference that Allison knew or should have known that Tate was intoxicated when he left his home. To send an intoxicated employee onto a busy highway in a company car is not furnishing him with a safe place in which to work. The proper rule is thus stated in Campbell, Workmen's Compensation, volume 1, page 203, section 211, as follows: ''The Act imposes upon the employer the duty of supplying not only safe employment, *but a safe place of employment.* An important element of this duty is the maintenance of proper discipline. *If the employer permits intoxication,* . . . or other dangerous practices amongst his employees, *the results thereof are industrial injuries.* It is the tacit approval and consent of the employer to be inferred from the fact of his knowledge of these practices, and his failure to terminate them, which make the special hazard thereby involved incidental to his particular employment and, as such, a source of compensable injuries . . .'' (Italics added.)

While no authorities are cited in support of the intoxication point, the rule is a common sense one and necessarily follows from a proper interpretation of the statutes to which reference has been made.

Such a state of facts, if found to exist, would support a finding of estoppel. Such participation by the employer amounts to an implied representation that the employer will not hold it against the employee if he drinks, and will not deprive him of his job or of compensation benefits if he does so. The other elements of an estoppel are obviously present.

The petitioner contends that the evidence not only would permit but compels the finding of an estoppel. We do not

think that this is so. We believe that justice requires that the issue of whether the employer was or was not estopped from relying upon the fact that Tate was intoxicated should be re-heard by the commission in a proceeding where both parties know what the issues are, and where they can produce all evidence that may be available to them. However, inasmuch as there was evidence that would have supported a finding of estoppel had one been made, the commission failed to find on a material issue. This necessitates annulling the award to permit the making of a proper finding in accordance with the views herein expressed.

The award is annulled.

Bray, J., and Wood (Fred B.), J., concurred. .

A petition for a rehearing was denied November 18, 1953, and respondent's (American Bldg. Main. Co.) petition for a hearing by the Supreme Court was denied December 17, 1953. Edmonds, J., Schauer, J., and Spence, J., were of the opinion that the petition should be granted.