[Civ. No. 44240. Second Dist., Div. Three. June 30, 1975.]

FLORENCE CALROW et al., Plaintiffs and Appellants, v.
APPLIANCE INDUSTRIES, INC., Defendant and Respondent.

558

---

**COUNSEL**

Gage & Cooper, Sanford M. Gage and Leonard Sacks for Plaintiffs and Appellants.

Spray, Gould & Bowers and Daniel O. Howard for Defendant and Respondent.

---

**OPINION**

**FORD, P. J.**—Plaintiffs appeal from a judgment of nonsuit entered pursuant to Code of Civil Procedure section 581c.

Plaintiffs were injured in an automobile accident involving their car and a vehicle driven by defendant Richard Norman Beaudoin (hereafter Beaudoin). Beaudoin was intoxicated at the time of the accident. The case as to Beaudoin was settled out of court. However, plaintiffs also sought to impose liability upon Beaudoin's employer, respondent herein, Appliance Industries, Inc. (hereafter Appliance), on the theory that Appliance furnished or caused to be furnished an alcoholic beverage to Beaudoin prior to the accident, and that Beaudoin was an habitual drunkard and/or was obviously intoxicated at that time. (Bus. & Prof. Code, § 25602; *Brockett* v. *Kitchen Boyd Motor Co.,* 24 Cal.App.3d 87 [100 Cal.Rptr. 752].)

After plaintiffs' attorneys had presented their opening statements to the jury, defendant Appliance made a motion for nonsuit on the ground that plaintiffs failed to show that they would produce evidence sufficient to establish that defendant Appliance had breached any duty with respect to plaintiffs or that defendant Appliance had furnished, given or caused to be furnished or given any alcoholic beverage to Beaudoin.

The trial court granted defendant Appliance's motion.

 As was said by the court in *Timmsen* v. *Forest E. Olson, Inc.,* 6 Cal.App.3d 860, at pages 867-868 [86 Cal.Rptr. 359]: "A motion for

nonsuit upon an opening statement is authorized by section 581c of the Code of Civil Procedure. In connection therewith the court must accept as true all of the facts set forth in the statement, must give those facts all the value to which they are legally entitled, and must indulge in every legitimate inference which may be drawn therefrom. A nonsuit is warranted only when the court concludes from such facts and inferences that as a matter of law there will be no evidence of sufficient substantiality to support a judgment in favor of the plaintiff. (*Stephan* v. *Proctor,* 235 Cal.App.2d 228, 231 [45 Cal.Rptr. 124]; *Bocker* v. *Miller,* 213 Cal.App.2d 345, 347 [28 Cal.Rptr. 818]; 2 Witkin, Cal. Procedure (1954) Trial § 125 et seq.)"

However, as was said in *Palazzi* v. *Air Cargo Terminals, Inc.,* 244 Cal.App.2d 190, at pages 194-195 [52 Cal.Rptr. 817]: "A nonsuit may be granted on opening statement only 'where it is clear that *counsel has undertaken to state all of the facts which he expects to prove* and it is plainly evident that the facts thus to be proved will not constitute a cause of action.' (*Weyburn* v. *California Kamloops, Inc., supra; Bias* v. *Reed, supra; Greenwood* v. *Mooradian, supra; Wright* v. *Arcade School Dist.,* 230 Cal.App.2d 272, 275 [40 Cal.Rptr. 812].) It may be granted where plaintiff has been afforded full opportunity to present all of the facts and such presentation shows the inadequacy of the case as a matter of law. (*Nault* v. *Smith,* 194 Cal.App.2d 257, 261 [14 Cal.Rptr. 889]; *Stephan* v. *Proctor,* 235 Cal.App.2d 228, 231 [45 Cal.Rptr. 124]; see *Nuffer* v. *Insurance Co. of North America,* 236 Cal.App.2d 349, 361-362 [45 Cal.Rptr. 918].)" (See *Young* v. *Desert View Management Corp.,* 275 Cal.App.2d 294, 295-296 [79 Cal.Rptr. 848]; *Wright* v. *Arcade School Dist.,* 230 Cal.App.2d 272, 275 [40 Cal.Rptr. 812].)

In the case presently before this court the opening statement made by plaintiff Clara Davis' counsel and which was adopted by counsel for plaintiff Florence Calrow is in pertinent part as follows:[1] "MR. COOPER [counsel for plaintiff Clara Davis]: I'd like to tell you briefly what we intend to prove in this trial. This is an automobile accident that occurred on Panama and Sepulveda in which Mr. Beaudoin was making a left turn and struck the vehicle being driven by . . . [plaintiff] Florence Calrow, in which Mrs. Davis [plaintiff Clara Davis] was a passenger at the time of the accident. We plan to prove Mr. Beaudoin was under the influence of alcohol, and we plan to use two of the officers who arrested him who say he appeared to be too intoxicated to know what he was

---

[1]Those parts of the opening statement relating to the injuries and damages suffered by plaintiffs have been excluded from this account.

doing. He had all the tests. He was given a breathalizer test which indicated a reading at .19, and he was arrested for being under the influence. This brings us back to, I think, the main point as to whether or not he was drinking and whether or not anybody was at fault for this accident besides Mr. Beaudoin. Mr. Beaudoin worked for [defendant] Appliance Plating and Appliance Industries, and had worked there off and on for some time. He was a known alcoholic. They knew he drank heavily. He bragged and boasted to the people he worked with that he had drank heavily for some time. Every time they had a party, he'd be there; and Mr. Ross, who is a supervisor for Appliance Plating, said he had observed Mr. Beaudoin at parties at Christmastime where he, Mr. Beaudoin, would get so intoxicated Mr. Ross would have to carry him to the car for his wife to take him home. . . . MR. COOPER: . . . We will prove that the company knew that Mr. Beaudoin drank heavily and was an alcoholic. . . . MR. COOPER: We will prove this through the deposition of the owner of the company, Mr. Vachon, who said he knew he drank heavily and in excess, and also through Norman Ross, who was the night supervisor, who also knew that he drank to excess, and stated that at several parties given at the company—stated in his words: 'Mr. Beaudoin would get bombed and have to be taken home.' We will prove Mr. Beaudoin was at work; that he left work and that he came back to work—on the night of July 9th, 1970, he came back to specifically work on his car with a windshield wiper he was trying to fix in a 1959 Plymouth station wagon. After he was working for some time, we will prove that an employee—and the only description that we have through the depositions is that he seemed to be a large Mexican employee—came back; that he came back with at least a gallon to a gallon and a half of wine; was carrying it through the factory and asked Mr. Beaudoin if he wanted to, quote, guzzle it down with him. He then went into the factory to tell everybody that his wife had a baby. He came back with everybody, because the lunch truck was there; and, through the evidence, we will prove that everybody included a Norman Ross and at that time everybody was sitting around, or standing around there, drinking around the lunch truck, which was in a well-lit area. Mr. Beaudoin, according to the interrogatories, was drinking on the premises for at least three hours; that he and the large Mexican consumed most of the gallon to gallon and a half of wine; and, then, Mr. Beaudoin left the premises at approximately one o'clock, which is closing time. At no time did Mr. Ross ever tell them to stop drinking. . . . MR. COOPER: We'll prove through Mr. Beaudoin's testimony in his deposition he left the plant at one o'clock, was driving towards his house, which was only two miles away, and at that time he was intoxicated and struck our clients.

The deposition taken of Roy Vachon, the owner of the company, testified that the job of the night supervisor, Mr. Ross, was to be a policeman, a security guard, and to make sure that everybody was kept in line; that he was to stop any drinking on the premises by anybody; that no drinking was to be on the premises; and, we intend to prove by the actions of letting the employee bring wine onto the premises and by the implied consent of consenting to the fact that these people were drinking the wine and doing nothing about it, that the company in itself then furnished directly and indirectly the wine to Mr. Beaudoin; that they violated the Business and Professions Code—that we will go into later; and that they should be held responsible for the act of Mr.—act of Mr. Ross and the act of their employer—employee, the man bringing the wine in. I don't think there is any question that the company under this situation should be held responsible for the acts of the people that they employed when they do not themselves accept these acts; and, it's a violation of the Business and Professions Code."

Thereafter Mr. Gage, counsel for plaintiff Florence Calrow, sought to amplify the foregoing statement as follows: "I'm Sanford Gage, and I represent Florence Calrow who sustained severe injuries as a result of this automobile collision. I will adopt the statement Mr. Cooper has already given to you as part of her statement, so—and just amplify a little bit, so you will have a complete picture of what we believe the evidence is and what it will establish in this case. I think it will show clearly that the driver of the vehicle who caused this collision, who was driving a '59 station wagon, Mr. Beaudoin, had been at the plant of defendant Appliance Industries, Incorporated; and that he had been at that plant consuming the beer and wine that had been brought on the premises by other employees of the defendant on the evening that this collision occurred. We'll show that at least one of the bottles of wine was a huge gallon bottle, and that it was being passed around and offered to all of the employees there; and that, indeed, five or six others, in addition to Mr. Beaudoin, consumed this; and this was in the lighted, open area in the presence of, the area where the supervisor could have taken steps to have prevented it. We will show that at the night shift that although this was a big company and many, many employees during the daytime, that at that time at the night shift there were only some 20 or 25 employees, and so it was obvious what was being done at this time and the drinking that was going on. We will further prove that the supervisor knew that Mr. Beaudoin was intoxicated, and that he saw him so drunk in his car that, in his words, he saw him falling out of his car. And within ten minutes of closing time of the plant—the plant closing time was at

one; the collision a couple of miles, a mile, or so away—at ten minutes later when Mr. Beaudoin was arrested, his physical appearance was that of bloodshot and watery eyes, clothing dishevelled, unable to take care, pick out his wallet and do the various sobriety tests, and so he clearly was intoxicated and obviously so when he left the plant some ten minutes previously; and that the supervisor by permitting the initial bringing onto the premises of the intoxicating beverages, taking no steps whatever to prevent that being furnished to Mr. Beaudoin and the other employees, by in fact tacitly encouraging it until this collision occurred; that the company should be held responsible for the acts of its employees."

Thereafter, the trial court stated its intention to grant the motion for nonsuit. Mr. Gage, counsel for plaintiff Florence Calrow, requested and received permission to add the following to plaintiffs' opening statement: "I think that we covered it in opening statement, but if we did not, we would indicate that the drinking took place on the premises of the defendant; that this included the inside of the plant—outside of the plant; and that at all times it was on the company's defendant Appliance Incorporated's premises; that the area was lighted; that the supervisor observed the drinking take place; that he took no steps to correct the situation; and that, apparently, the—We would also establish that the drinking took place not less than a period of from—of four hours and quite likely a period of some seven hours, and that it concluded at closing time; and that thereafter, immediately thereafter, and within a distance of two miles this collision occurred; that the quantity consumed was at least a gallon jug and probably another half-gallon jug and beer at the minimum; and that this was consumed by him, by at least five or six, or more, employees in addition to Mr. Beaudoin and the fellow that we've described as 'big Mike'; that this was observed by the supervisor; that there was only one supervisor at that time; and that the atmosphere created was that of a kind of carnival-type atmosphere; and that we feel under these circumstances that establishes the company's liability."

In granting the motion for nonsuit the trial court explained its reasoning as follows: ". . . Now I think there is no question but what there would be absolutely no liability upon the defendant Appliance Industries except for the application of Section 25602 of the Business and Professions Code. I don't think there is any contention otherwise. In other words, an employee who is not in the course and scope of his employment cannot impose liability on his employer except for a special duty that is imposed by statute. This statute has been applied in the cases

in which you cite. They have said that someone who furnishes, sells, furnishes, gives, or causes to be sold alcoholic beverages to any habitual, or common, drunkard, or to an obviously intoxicated person, is guilty of a misdemeanor. Therefore, we have the question: Did Appliance Industries, Incorporated, sell, furnish, give, or cause to be sold alcoholic beverages to Mr. Beaudoin? Your statement and the entire picture presented here definitely establishes that the liquor was brought on the premises by this 'big Mike.' It was brought on for a definitely—a matter that was definitely personal to him, that is, the birth of his child and a celebration for that reason; that 'big Mike' was the one who furnished the liquor. Now, we come to the question of whether or not 'big Mike' was in the course and scope of his employment. Unless he was, there is absolutely no way that this defendant can be held responsible for his activities. He was not at work. He was on the premises. They were celebrating. He was not in any way involved in any work pertaining to company business; therefore, it is my ruling that he was not acting within the scope and course of his employment at the time, and that there is no liability upon this defendant; and, the motion will be granted."

Relying on *Vesely v. Sager,* 5 Cal.3d 153 [95 Cal.Rptr. 623, 486 P.2d 151], and *Brockett* v. *Kitchen Boyd Motor Co., supra,* 24 Cal.App.3d 87, plaintiffs contend on this appeal that "[d]efendant [Appliance] is liable because its conduct was a substantial factor in furnishing the alcoholic beverage and bringing about the injury to plaintiffs."

Business and Professions Code section 25602 provides as follows: "Every person who sells, furnishes, gives, or causes to be sold, furnished, or given away, any alcoholic beverage to any habitual or common drunkard or to any obviously intoxicated person is guilty of a misdemeanor." In *Vesely* v. *Sager, supra,* 5 Cal.3d 153, the California Supreme Court held that civil liability could be imposed upon a vendor of alcoholic beverages for providing alcoholic drinks in violation of Business and Professions Code section 25602 to a customer who, as a result of intoxication, injures a third person. In so deciding, the court rejected the traditional common law rule which denied recovery on the ground that the furnishing of alcoholic beverages was not the proximate cause of the injuries suffered by the third person.

In *Vesely* the Supreme Court reasoned as follows (5 Cal.3d at pp. 163-165): "To the extent that the common law rule of nonliability is based on concepts of proximate cause, we are persuaded by the reasoning of the cases that have abandoned that rule. The decisions in

those jurisdictions which have abandoned the common law rule invoke principles of proximate cause similar to those established in this state by cases dealing with matters other than the furnishing of alcoholic beverages. [Citations.] Under these principles an actor may be liable if his negligence is a substantial factor in causing an injury, and he is not relieved of liability because of the intervening act of a third person if such act was reasonably foreseeable at the time of his negligent conduct. [Citations.] Moreover, 'If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious or criminal does not prevent the actor from being liable for harm caused thereby.' (Rest.2d Torts, § 449; [citations].) [¶] Insofar as proximate cause is concerned, we find no basis for a distinction founded solely on the fact that the consumption of an alcoholic beverage is a voluntary act of the consumer and is a link in the chain of causation from the furnishing of the beverage to the injury resulting from intoxication. Under the above principles of proximate cause, it is clear that the furnishing of an alcoholic beverage to an intoxicated person may be a proximate cause of injuries inflicted by that individual upon a third person. If such furnishing is a proximate cause, it is so because the consumption, resulting intoxication, and injury-producing conduct are foreseeable intervening causes, or at least the injury-producing conduct is one of the hazards which makes such furnishing negligent. [¶] The central question in this case, therefore, is not one of proximate cause, but rather one of duty: Did defendant Sager owe a duty of care to plaintiff or to a class of persons of which he is a member? [¶] A duty of care, and the attendant standard of conduct required of a reasonable man, may of course be found in a legislative enactment which does not provide for civil liability. [Citations.] In this state a presumption of negligence arises from the violation of a statute which was enacted to protect a class of persons of which the plaintiff is a member against the type of harm which the plaintiff suffered as a result of the violation of the statute. [Citations.] The Legislature has recently codified this presumption with the adoption of Evidence Code section 669: 'The failure of a person to exercise due care is presumed if: (1) He violated a statute, ordinance, or regulation of a public entity; (2) The violation proximately caused death or injury to person or property; (3) The death or injury resulted from an occurrence of the nature which the statute, ordinance, or regulation was designed to prevent; and (4) The person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted.' (Subd. (a).) [¶] In the instant case a duty of care is imposed upon defendant Sager by

Business and Professions Code section 25602, which provides: 'Every person who sells, furnishes, gives, or causes to be sold, furnished, or given away, any alcoholic beverage to any habitual or common drunkard or to any obviously intoxicated person is guilty of a misdemeanor.' This provision was enacted as part of the Alcoholic Beverage Control Act of 1935 (Stats. 1935, ch. 330, § 62, at p. 1151) and was adopted for the purpose of protecting members of the general public from injuries to person and damage to property resulting from the excessive use of intoxicating liquor. [¶] Our conclusion concerning the legislative purpose in adopting section 25602 is compelled by Business and Professions Code section 23001, which states that one of the purposes of the Alcoholic Beverage Control Act is to protect the safety of the people of this state. . . . [¶] From the facts alleged in the complaint it appears that plaintiff is within the class of persons for whose protection section 25602 was enacted and that the injuries he suffered resulted from an occurrence that the statute was designed to prevent. Accordingly, if these two elements are proved at trial, and if it is established that Sager violated section 25602 and that the violation proximately caused plaintiff's injuries, a presumption will arise that Sager was negligent in furnishing alcoholic beverages to O'Connell. (See Evid. Code, § 669.)"

In *Brockett* v. *Kitchen Boyd Motor Co., supra,* 24 Cal.App.3d 87, the court expanded the rule of *Vesely* v. *Sager* to noncommercial furnishers of alcoholic beverages to minors in violation of Business and Professions Code section 25658. In *Brockett,* the plaintiffs brought suit against Kitchen Boyd Motor Co. for injuries sustained in an automobile accident. In their complaint the plaintiffs alleged that the automobile in which they were riding was struck by an automobile driven by a minor employee of defendant. The plaintiffs alleged that the minor was intoxicated at the time of the accident and that his intoxication had been induced by defendant employer as a result of a company Christmas party at which defendant employer served the minor "copious amounts of liquor." The appellate court quoted at length from the opinion in *Vesely* v. *Sager, supra,* and then stated (24 Cal.App.3d at pp. 92-93): "Respondent points out that the Supreme Court narrowed the perimeter of the *Vesely* decision to commercial vendors; the court did not 'decide whether a noncommercial furnisher of alcoholic beverages may be subject to civil liability under section 25602 or whether a person who is served alcoholic beverages in violation of the statute may recover for injuries suffered as a result of that violation.' Nevertheless, the rationale of the *Vesely* decision charts the course to be followed in this state. We consider the problem presented in this appeal with this premise in mind. [¶] Under section

25658 of the Business and Professions Code *every* person who sells, *furnishes* or *gives* any alcoholic beverage to a minor is guilty of a misdemeanor. The precise question, therefore, is this: Now that the California Supreme Court has applied common sense to a segment of the California tort law where this commodity was noticeably lacking and has paved the way to a forthright approach to litigation involving injuries caused by intoxicated persons who drive vehicles on the public highways, does the common law immunity still protect the noncommercial purveyor of alcohol who, in wilful disregard of the statutory proscription, causes a minor's intoxication? [¶] The answer to the question is obvious. Section 25658 was adopted and amended by the California Legislature, presumably because the legislative body believed that most minors are neither physically nor mentally equipped to handle the consumption of intoxicating liquor. Moreover, the section was enacted as part of the Alcoholic Beverage Control Act of 1935 (Stats. 1935, ch. 330, § 61 at p. 1151), and like section 25602 'was adopted for the purpose of protecting members of the general public from injuries . . . resulting from the excessive use of intoxicating liquor.' (*Vesely* v. *Sager, supra,* 5 Cal.3d 153, 165.) Clearly, the impeccable logic of *Vesely* impels the conclusion that any person, whether he is in the business of dispensing alcoholic beverages or not, who disregards the legislative mandate breaches a duty to anyone who is injured as a result of the minor's intoxication and for whose benefit the statute was enacted. If one wilfully disobeys the law and knowingly furnishes liquor to a minor with knowledge that the minor is going to drive a vehicle on the public highways, as alleged in this case, he must face the consequences. The law, as well as good sense, can demand no less. [Citation.]"

In *Brockett* the court expressly avoided resolution of the question whether a noncommercial furnisher to an intoxicated adult would be held liable under the rule of *Vesely* v. *Sager,* stating as follows (24 Cal.App.3d at pp. 93-94): "Respondent suggests that if we lift the common law immunity of noncommercial suppliers of alcohol, we will subject every social host to civil liability for injuries caused by intoxicated guests and will soon flood the courts with a myriad of perplexing problems. Following are a few examples: How is an unsophisticated social host to determine when a guest has reached his alcoholic tolerance; to what extent is a host to supervise social activities; is a host required to ignore social convention by refusing to serve a guest a drink because he merely suspects the guest may be intoxicated? [¶] We do not reach the broad question as to whether a host at a social gathering is subject to liability under section 25602 for injuries caused by

intoxicated guests. Section 25658 is directed to a special class; it pertains to young people who because of their tender years and inexperience are unable to cope with the imbibing of alcoholic beverages. Under this section a person's duty is unequivocal; it requires no expertise to perform; it involves no exercise of judgment, nor is one faced with undue difficulties because of traditional niceties or convention or compulsion."

In the case presently before this court plaintiffs seek to not only expand the rule of *Vesely* and *Brockett* to the noncommercial furnisher of alcohol to an intoxicated adult, but also seek to have this court interpret the language used in Business and Professions Code section 25602 to include a person who has not actually supplied or given an alcoholic beverage to an intoxicated person but has merely refrained from doing any act to stop such intoxicated person from imbibing to excess. Under the circumstances it is logical first to focus on the question whether it may be said that defendant Appliance furnished, gave or caused to be furnished or given an alcoholic beverage to defendant Beaudoin.

Under the facts as set forth in plaintiffs' opening statements the employee referred to as "big Mike," who brought the alcoholic beverage onto Appliance's premises, was off work at the time and was not acting in the course of his employment so that it could not be said that, on the basis of the doctrine of *respondeat superior*, Appliance supplied the intoxicating liquor through its employee.

In *People* v. *Epperson*, 38 Cal.App. 486 [176 P. 702], the defendant demurred to an information charging him with a violation of the "Wyllie Local Option Law." The court stated as follows (38 Cal.App. at p. 488): "The language of said section, so far as it is pertinent to the present inquiry, is: 'It shall be unlawful for any person . . . to sell, furnish, distribute or give away any alcoholic liquors except as provided in section 16 hereof.' . . . The charge in the information under review that the defendant did sell and furnish alcoholic liquor to said Tolley does not necessarily involve the statement of two separate and distinct offenses. To furnish a person with any article is to supply or provide him with such article (Webster's Dictionary), and, therefore, whether a person *sells* or *gives* to another alcoholic liquor, he at the same time necessarily furnishes such person with such liquor. The object of the so-called Wyllie law is to put a stop to the trafficking in alcoholic liquors in any manner or form or degree in those subdivisions of the state that

have regularly adopted its provisions, and to that end section 13 of said act specifically enumerates the various ways in which a transfer of such liquors may not be made by one to another. The word 'furnish' is broader than the words 'sell' and 'give,' as they are used in the statute, and if said word had been the only one used in the statute as it now otherwise reads—that is, if the words 'sell' and 'give' were not therein used and in their place the word 'furnish' was alone employed—it would not for a moment be doubted that a person who had sold or given any alcoholic liquor to another could be convicted of a violation of the statute by thus *furnishing* to the other person such liquor, if he were charged in the indictment or information with furnishing such liquor to another." (See *People* v. *Joe Joy,* 30 Cal.App. 36, 38 [157 P. 507].) It is manifest that the word "furnish" implies some type of affirmative action on the part of the furnisher.

Plaintiffs have cited no case and our independent research has revealed none indicating that mere acquiescence in another's activity or mere failure to protest or attempt to stop another from imbibing amounts to a furnishing of an alcoholic beverage in the sense in which the term is used in Business and Professions Code section 25602. Plaintiffs failed in their opening statement to show that they could prove facts amounting to a breach by defendant Appliance of the duty established by virtue of Business and Professions Code section 25602.

In plaintiffs' reply brief they cite a recent Supreme Court case entitled *McCarty* v. *Workmen's Comp. Appeals Bd.,* 12 Cal.3d 677 [117 Cal.Rptr. 65, 527 P.2d 617], and state that that case "holds that an employee who becomes intoxicated at his place of employment with the express or implied consent of his employer is in the course and scope of his employment and remains in such capacity while driving home intoxicated from the premises." If we understand plaintiffs' argument, it is that under the law as expressed in *McCarty* defendant Beaudoin as he drove home from the Appliance premises was acting in the course and scope of his employment and, thus, under the doctrine of *respondeat superior* Appliance was liable for Beaudoin's negligence with respect to the automobile accident with plaintiffs. Thus, plaintiffs state in their reply brief that "[a]lthough the *McCarty* case is not an express holding that an employer is liable under the doctrine of *respondeat superior* (because it was a workmen's compensation holding), it does stand for the proposition that under the factual showing very nearly identical to the present case the employee is in the course of his employment."

Plaintiffs' reliance on *McCarty* v. *Workmen's Comp. Appeals Bd.* is misplaced. In *McCarty* the Supreme Court held that an employee who became intoxicated at a Christmas party on his employer's premises did so in the course of his employment. The employee was killed while driving home from the party, but the Supreme Court held that the going and coming rule did not preclude the award of death benefits sought by his wife because McCarty became intoxicated in the course of his employment and the intoxication proximately caused his death. As the court stated (12 Cal.3d at p. 681): "[I]f the proximate cause is of industrial origin, the time and place of injury or death even if foreign to the premises does not serve to nullify recovery."

However, the facts upon which the Supreme Court relied in finding that McCarty was acting in the course of his employment when he became intoxicated on his employer's premises are very different from those relied upon by plaintiffs herein. The Supreme Court summarized the facts relating to their determination as follows (12 Cal.3d at pp. 681-682): "We arrive, therefore, at the issue of whether McCarty's intoxication arose in the course of his employment. [Fn. omitted.] Employee social and recreational activity on the company premises, endorsed with the express or implied permission of the employer, falls within the course of employment if the 'activity was conceivably of some benefit to the employer. . . .' (*Liberty Mut. Ins. Co.* v. *Ind. Acc. Com.* (1952) 39 Cal.2d 512, 517 [247 P.2d 697] (dictum); *Winter* v. *Industrial Acc. Com.* (1954) 129 Cal.App.2d 174, 178 [276 P.2d 689].) [Fn. omitted.] [¶] In the present case the owner-managers of Apartment Plumbers, by permitting recurrent drinking parties on the premises, and by routinely using company accounts and funds to purchase the intoxicants, demonstrated that they considered these gatherings to be company activities. No one suggests that Schlossberg and McGowan, in so acting, exceeded their authority, nor that in offering employees liquor owned by the company they improperly used company property. To the contrary, such gatherings served both to foster company camaraderie, and to provide an occasion for the discussion of company business. We conclude that since the owners of the company authorized these gatherings, which conceivably benefited the company, employee attendance falls within the scope of employment. [¶] Proof of benefit to the employer, moreover, is not essential to place an activity within the scope of employment if that activity has become a customary incident of the employment relationship. . . . [¶] The record in the present case demonstrates that drinking parties had become a recognized, established, and encouraged custom at

Apartment Plumbers. We conclude that McCarty's attendance at such parties comes within the scope of his employment."

In the case presently before this court there were no facts presented in the opening statement tending to show that the drinking which took place on Appliance's premises was "conceivably of some benefit to the employer" or that such drinking had become "a customary incident of the employment relationship." No showing was made that defendant Beaudoin was acting within the course and scope of his employment at any time pertinent herein.

■ Plaintiffs next contend that "defendant is also liable to plaintiffs for a violation of the special duties imposed upon an employer by the Labor Code." Plaintiffs rely on Labor Code sections 6400-6403[2] which provide generally that an employer has a duty to furnish its employees a safe place to work. Plaintiffs contend that in allowing defendant Beaudoin to drink and become intoxicated on its premises Appliance violated those Labor Code sections. They assert that "[t]he Labor Code safety orders also were intended to protect third persons from injury."

Plaintiffs place reliance on Tate v. Industrial Acc. Com., 120 Cal.App.2d 657 [261 P.2d 759]. In that case, the commission had denied certain death benefits to the minor son of employee Tate who was killed while operating a company car on company business on the ground that Tate was intoxicated at the time of the accident. The issue presented on review was whether the commission erred in failing to pass upon the question as to whether, under the circumstances, the employer was estopped to raise the defense of intoxication. The appellate court summarized the evidence as follows (120 Cal.App.2d at pp. 664-665): "Here the evidence most favorable to the petitioner shows that Allison

---

[2]At the time of the incident in question herein, Labor Code section 6400 provided as follows: "Every employer shall furnish employment and a place of employment which are safe for the employees therein."

Section 6401 provided: "Every employer shall furnish and use safety devices and safeguards, and shall adopt and use practices, means, methods, operations, and processes which are reasonably adequate to render such employment and place of employment safe. Every employer shall do every other thing reasonably necessary to protect the life and safety of employees."

Section 6402 provided: "No employer shall require, or permit any employee to go or be in any employment or place of employment which is not safe."

Section 6403 provided: "No employer shall fail or neglect: (a) To provide and use safety devices and safeguards. (b) To adopt and use methods and processes reasonably adequate to render the employment and place of employment safe. (c) To do every other thing reasonably necessary to protect the life and safety of employees."

[Tate's supervisor] asked the two men, including Tate, to accompany him to the Drake Bowl to watch him collect a bill, an invitation that hints, at least, at official duty. Then, knowing Tate's past weaknesses in reference to liquor, Allison, during working hours, purchased a round of drinks and participated in at least another round. Then, knowing that Tate had to drive on a main highway back to San Francisco, he again visited another bar with his two employees and again participated with them in at least several more rounds of drinks. Deardorff became so drunk that he has no recollection of any of the events after he and Tate left the bar to drive to Allison's home. Tate consumed so many drinks that shortly after leaving Allison's home he was driving most erratically and could not control the automobile. The quantity of alcohol in his blood and brain demonstrated that he was then intoxicated. Obviously, it is a possible and reasonable inference that Allison knew or should have known that Tate was intoxicated when he left his home." With respect to the governing law the court stated in *Tate* as follows (120 Cal.App.2d at p. 665): "To send an intoxicated employee onto a busy highway in a company car is not furnishing him with a safe place in which to work. The proper rule is thus stated in Campbell, Workmen's Compensation, volume 1, page 203, section 211, as follows: 'The Act imposes upon the employer the duty of supplying not only safe employment, *but a safe place of employment.* An important element of this duty is the maintenance of proper discipline. *If the employer permits intoxication, . . .* or other dangerous practices amongst his employees, *the results thereof are industrial injuries.* It is the tacit approval and consent of the employer to be inferred from the fact of his knowledge of these practices, and his failure to terminate them, which make the special hazard thereby involved incidental to his particular employment and, as such, a source of compensable injuries . . .' (Italics added.) [¶] While no authorities are cited in support of the intoxication point, the rule is a common sense one and necessarily follows from a proper interpretation of the statutes to which reference has been made. [¶] Such a state of facts, if found to exist, would support a finding of estoppel. Such participation by the employer amounts to an implied representation that the employer will not hold it against the employee if he drinks, and will not deprive him of his job or of compensation benefits if he does so. The other elements of an estoppel are obviously present."

*Tate* v. *Industrial Acc. Com., supra,* is inapposite here. The fact is clearly shown in plaintiffs' opening statement that defendant Beaudoin was not working at his job at the time the drinking took place. He had returned to the premises of his employer on his off-duty hours to work on

his own car. And the facts presented by plaintiffs show that the alcoholic beverages were not supplied by Appliance but by a fellow employee of Beaudoin who was also off-duty. Furthermore, the issues raised and the principles discussed with respect to the right to employee benefits, the defense of voluntary intoxication and estoppel to raise such a defense are not pertinent in a third party personal injury action such as is presently before this court.

*Porter* v. *Montgomery Ward & Co., Inc.,* 48 Cal.2d 846 [313 P.2d 854], held that third persons might rely on violations of certain Labor Code safety orders to establish negligence where such orders were designed to protect not only employees but also members of the public on business premises. Thus in *Porter* v. *Montgomery Ward & Co., Inc., supra,* at page 849, the Supreme Court stated: "Some safety orders, such as those regulating machinery, might be regarded as peculiarly designed to protect employees when applied to places of employment which the public is prohibited from entering. An entirely different situation, however, is presented where, as here, a person is a business invitee in a department store and is using a stairway which the store provides for persons in her position as well as for employees. Plaintiff was entitled to the benefits of the safety order under the circumstances, and the court properly received it in evidence and informed the jury that its violation by defendant gave rise to a presumption of negligence which could be rebutted by evidence of justification or excuse. [Citations.]"

*Davis* v. *Pine Mountain Lbr. Co.,* 273 Cal.App.2d 218 [77 Cal.Rptr. 825], involved the propriety of the trial court's instructions in a case where plaintiff sought damages for injuries sustained when his vehicle was struck by a forklift driven by defendant's employee on a public highway. The appellate court stated (pp. 225-226): "The court gave Labor Code section 6400, 'Every employer shall furnish employment and a place of employment which are safe for the employee therein,' and quoted from six other sections of that code dealing with the duties of an employer as to safety of his employees and that a violation of said statutes would constitute negligence. Plaintiff indicates that the propriety of the Labor Code instructions is based upon the applicability of the Vehicle Code sections hereinbefore discussed. If this were true, the court would have erred in giving the Labor Code instructions. However, if the jury were to find that irrespective of the exempted Vehicle Code sections, a forklift operated on the highway was not a safe place for an employee to work, then the Labor Code sections would be applicable. It has been held that Labor Code provisions setting forth an employer's duty to

provide his employees a safe place to work may extend to third parties (see *Porter* v. *Montgomery Ward & Co., Inc.* (1957) 48 Cal.2d 846, 849 [313 P.2d 854]), and here the duty was intended to protect not only the employee but third persons using the highway."

*Davis* is distinguishable from the case presently before this court because the employee was operating the forklift on the public highway in the course and within the scope of his employment. The forklift was his place of employment and Labor Code provisions setting forth his employer's duty to provide a safe place for the employee to work *while operating a forklift* were intended to protect not only the employee but also third persons using the highway. As noted hereinabove, not only was defendant Beaudoin not acting in the course of his employment at any time pertinent herein, but also the facts shown by plaintiffs in their opening statement did not constitute a violation of Labor Code sections 6400-6403 on the part of defendant Appliance insofar as the plaintiffs herein were concerned.

The judgment is affirmed.

Allport, J., and Potter, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied September 10, 1975.