[L.A. No. 30221. In Bank. Oct. 30, 1974.]

CONNIE McCARTY, Petitioner, v.
WORKMEN'S COMPENSATION APPEALS BOARD,
APARTMENT PLUMBERS, INC., et al., Respondents.

678

**COUNSEL**

T. Keith Pocock and Nicholas C. Byhower for Petitioner.

T. Groezinger, James J. Vonk, George S. Bjornsen and Robert A. La Porta for Respondents.

## OPINION

**TOBRINER, J.**—On his way from a Christmas party at his employer's office, Daniel McCarty was killed when he drove into a railroad signal pole. Asserting that McCarty became intoxicated at the office party, and that this intoxication proximately caused the fatal accident, his wife applied for death benefits under Labor Code section 4702. The referee awarded the benefits, but the Workmen's Compensation Appeals Board granted reconsideration and denied the award. We issued a writ of review.

We shall point out that although the insurer contends that the going and coming rule bars recovery, since the accident occurred in transit, that rule does not apply if the approved consumption of alcohol on the employer's premises proximately caused the accident. Mr. McCarty's drinking did occur within the course of his employment; the employer, for its own benefit, permitted and encouraged as a regular custom drinking by employees on the premises; the employer cannot now escape responsibility for injuries resulting from its own established and dangerous policy. That policy also serves to estop it from asserting its employee's intoxication as a defense to the applicant's claim.

The crucial facts are not disputed. McCarty was an employee of Apartment Plumbers, Inc., a corporation owned and managed by Alan McGowan and Robert Schlossberg. The company's normal working day ended at 4:30 p.m., but employees, including McCarty, frequently remained at the company office after that time to discuss business and social matters, drink beer and liquor, play poker, and shoot craps. The owner-managers participated in these activities, and often purchased the refreshments with company funds. Employees stored beer in the refrigerator at the office; McCarty, who preferred bourbon, kept a half pint of Jack Daniels on a shelf. McCarty's wife testified that he would come home from work late, with evidence of drinking, about 75 percent of the time. The owners knew that McCarty drank alcoholic beverages and that relatively little alcohol affected his behavior.

On December 23, 1971, the company permitted the employees to leave work at 2:30 p.m. although it paid them for a full working day. Schlossberg, one of the owner-managers, testified that he, McCarty, and a few other employees remained on the premises talking, drinking, and playing poker. Business acquaintances dropped in to join the party; about 4 o'clock McGowan, the other owner-manager, arrived. About 15 to 20 people were in and out during the afternoon and evening, although no more than 5 to 10 were present at any one time.[1] The company furnished most of the liquor

---

[1] Among those present at the party was Manuel Urzua, a friend of McCarty's and an employee of Sears, who regularly sold appliances to Apartment Plumbers for resale

from bottles it received as Christmas presents from plumbing suppliers, supplemented, according to some witnesses, by liquor drawn from a company stock purchased for use as gifts to customers, suppliers, union officials, and plumbing inspectors.

McCarty went home about 5 p.m. and rejoined the party an hour later, bringing additional money for poker and a fresh half pint of Jack Daniels.[2] He passed the bottle around, and he and the other players continued to imbibe from it and the company stock. Later in the evening McCarty drank from the bottle, chased it with vodka (which he thought was water) and became ill. When the party broke up about 9 o'clock McCarty was visibly drunk. Schlossberg and a foreman both offered to drive McCarty home, but he refused. As we have noted, while driving home, McCarty lost his life when he collided with a railroad signal pole. At the time of death he had a blood alcohol content of .26 percent, well above the minimum needed to impair driving ability. All parties in this proceeding agree that his death proximately resulted from his inebriation.

We first observe that although McCarty was killed driving home from his place of employment, the going and coming rule does not preclude compensation.[3] McCarty became intoxicated at his place of employment, and this intoxication proximately caused his death. The present case is in this respect comparable to *Satchell* v. *Ind. Acc. Com.* (1949) 94 Cal.App. 2d 473 [210 P.2d 867], which upheld death benefits when an employee's ingestion of poison at his place of work led to his death five days later. *State Comp. Ins. Fund* v. *Ind. Acc. Com. (Wallin)* (1959) 176 Cal.App.2d 10 [1 Cal.Rptr. 73], likewise affirmed an award for an employee when, suffering from a vision impairment of industrial origin, he accidentally amputated a finger while sawing wood at home.     As these cases illustrate, if the proximate cause is of industrial origin, the time and place of injury or death even if foreign to the premises does not serve to nullify recovery.

We arrive, therefore, at the issue of whether McCarty's intoxication arose in the course of his employment.[4]     Employee social and recreational

---

to its customers. Urzua testified he went to Apartment Plumbers' office to see if he could pick up an order, and stayed to participate in the party. None of the witnesses recalls any discussion of business matters at the party.

[2] The only conflict in testimony in the present record concerns whether McCarty changed clothes and cleaned up before he returned to the party.

[3] For discussion of the history of the "going and coming rule," and the many exceptions to this rule, see *Hinojosa* v. *Workmen's Comp. Appeals Bd.* (1972) 8 Cal.3d 150 [104 Cal.Rptr. 456, 501 P.2d 1176].

[4] We have discovered no California workmen's compensation cases involving injuries occurring at office parties or arising from intoxication at such parties. Cases from other jurisdictions turn on the individual facts of each case relating to the location of the

activity on the company premises, endorsed with the express or implied permission of the employer, falls within the course of employment if the "activity was conceivably of some benefit to the employer. . . ." (*Liberty Mut. Ins. Co.* v. *Ind. Acc. Com.* (1952) 39 Cal.2d 512, 517 [247 P.2d 697] (dictum); *Winter* v. *Industrial Acc. Com.* (1954) 129 Cal.App.2d 174, 178 [276 P.2d 689].)[5]

■ In the present case the owner-managers of Apartment Plumbers, by permitting recurrent drinking parties on the premises, and by routinely using company accounts and funds to purchase the intoxicants, demonstrated that they considered these gatherings to be company activities. No one suggests that Schlossberg and McGowan, in so acting, exceeded their authority, nor that in offering employees liquor owned by the company they improperly used company property. To the contrary, such gatherings served both to foster company camaraderie, and to provide an occasion for the discussion of company business. We conclude that since the owners of the company authorized these gatherings, which conceivably benefited the company, employee attendance falls within the scope of employment.

■ Proof of benefit to the employer, moreover, is not essential to place an activity within the scope of employment if that activity has become a customary incident of the employment relationship. In *Winter* v. *Industrial Acc. Com.* (1954) 129 Cal.App.2d 174 [276 P.2d 689], a caddy, using the employer's golf course on a day when it was closed to the public, was struck by a golf ball. The board rejected the applicant's offer to produce testimony showing that improved golf skills would better his performance as a caddy, and denied benefits. In annulling that decision, the Court of Appeal concluded that "it was unnecessary to show direct benefit to the employer from the practice play of the caddies, for here the evidence showed without dispute that permissive use by the caddies of the golf course

---

party, the degree of employer sponsorship or participation, and the specific conduct which caused the injury in question. (See 1 Larson, Workmen's Compensation Law (1972) § 22.23.)

[5]The decisions do not require a high degree of employer benefit. Courts have, for example, found sufficient benefit in the possibility that an employee who went swimming on a hot day might thereafter, refreshed, better perform his employment duties (*State Comp. Ins. Fund* v. *Workmen's Comp. App. Bd.* (1967) 67 Cal.2d 925 [64 Cal.Rptr. 323, 434 P.2d 619]); that a camp counselor who went horseback riding might improve her riding skills and thus become a better counselor (*Rausch* v. *Workmen's Comp. App. Bd.* (1969) 274 Cal.App.2d 357 [79 Cal.Rptr. 148]); that for an employee who smokes, a cigarette break may aid him in performing his work (*Whiting-Mead Co.* v. *Industrial Acc. Com.* (1918) 178 Cal. 505 [173 P. 1105, 5 A.L.R. 1518]).

was a well-established custom and, therefore, contemplated by the contract of employment." (129 Cal.App.2d at p. 178.)[6]

We have referred to *Satchell* v. *Ind. Acc. Com., supra,* 94 Cal.App.2d 473, in connection with the going and coming rule. It is likewise in point as to the employer's liability for injury resulting from sanctioned drinking parties. There, the employer, who conducted a dry cleaning business, tolerated drinking by spotters during their afternoon break: "The Friday afternoon card games and drinking, indulged in during a recess in the work of the spotters was a recognized and customary practice." (94 Cal.App.2d at p. 477.) Empty whiskey bottles were used to store cleaning fluid. At an informal Christmas party, an employee mistakenly drank from a bottle containing the cleaning fluid, and died of poisoning. Without considering the question of possible benefit to the employer, the court upheld a finding that the injury occurred in the scope of employment.[7]

■ The record in the present case demonstrates that drinking parties had become a recognized, established, and encouraged custom at Apartment Plumbers. We conclude that McCarty's attendance at such parties comes within the scope of his employment.

Respondent insurer contends that McCarty permanently departed from the course of his employment when he went home for an hour to obtain additional money and liquor. ■ The cases, however, establish that when a worker completes a personal errand and returns to his place of employment to resume work, he reenters the course of employment. (*Cal. Cas. Ind. Exch.* v. *Ind. Acc. Com.* (1943) 21 Cal.2d 751 [135 P.2d 158]; *Pacific Elec. Ry. Co.* v. *Indus. Acc. Com.* (1934) 137 Cal.App. 245 [30 P.2d 444].)[8] If McCarty had gone on a brief personal errand during an

---

[6]Accord: *Reinert* v. *Industrial Acc. Com.* (1956) 46 Cal.2d 349, 354-355 [294 P.2d 713], quoting and approving the reasoning in *Winter* v. *Industrial Acc. Com., supra; Nichols* v. *Workmen's Comp. App. Bd.* (1969) 269 Cal.App.2d 598 [75 Cal. Rptr. 226].

[7]The only distinction between *Satchell* and the present case is that the decedent in *Satchell* drank during his regular working hours while McCarty's drinking began during normal working hours but continued through the evening. Inasmuch as other decisions have established that an employee who engages in acts contemplated by the employment contract on his own time may still fall within the course of employment (e.g., *Reinert* v. *Industrial Acc. Com., supra,* 46 Cal.2d 349), this distinction does not bar recovery in the present case.

[8]The insurer relies upon *State Dept. of Inst.* v. *Ind. Acc. Com.* (1941) 46 Cal. App.2d 439 [116 P.2d 79]. In that case Mrs. Connor, a hospital employee, promised to provide transportation for a fellow employee. Connor left the building, drove her car from the hospital parking lot to the front entrance of the hospital, and was injured as she reentered the building to search for her passenger. The opinion does not state whether Connor left the hospital premises, as distinguished from the building itself; neither does it consider whether her reentry into the building was an act reasonably

ordinary working day, no one would assert that this temporary deviation barred recovery for an injury which occurred after his return to work. The instant case differs only to the extent that McCarty did not return to the office of Apartment Plumbers to resume his regular work duties but to resume attendance at the Christmas party. But once we determine, as indeed we have, that attendance at that party falls within the scope of employment, it follows that when McCarty returned to his employer's premises to attend that party he reentered the scope of employment.[9]

■ We turn to the last issue: whether subdivision (d) of Labor Code section 3600, which precludes compensation for an injury "caused by the intoxication of the injured employee," bars applicant's claim. We conclude that the employer is estopped from asserting this defense.

The principle that an employer who tolerates and encourages drinking may be estopped from raising the defense of intoxication finds its origin in *Satchell* v. *Ind. Acc. Com., supra,* 94 Cal.App.2d 473, and gains a full explanation in *Tate* v. *Industrial Acc. Com.* (1953) 120 Cal.App.2d 657 [261 P.2d 759]. Tate, a janitor employed by a building maintenance firm, was invited by his supervisor to accompany him when he collected a bill from a client who ran a bowling alley. Tate did so accompany his supervisor. Because the client was otherwise engaged, the supervisor and Tate took a few drinks during the delay. Later that evening, after Tate had finished his janitorial duties, he and the supervisor repaired to a tavern for additional drinks. While driving home in a company car, Tate lost his life in an auto accident caused by his intoxication.

Rejecting the defense of intoxication, the Court of Appeal—in language fully applicable to the present case—stated that: " '*If the employer permits intoxication,* . . . or other dangerous practices amongst his employees, *the results thereof are industrial injuries.* It is the tacit approval and consent of the employer to be inferred from the fact of his knowledge of these

_____

to be expected by the employer as an incident to the employment. (Compare *North American Rockwell Corp.* v. *Workmen's Comp. App. Bd.* (1970) 9 Cal.App.3d 154 [87 Cal.Rptr. 774].) Nevertheless the Court of Appeal denied recovery on the ground that Connor's search for her passenger was a personal act which did not fall within the course of her employment.

Although we question the correctness of that decision, it is, in any event, distinguishable. Since the opinion rests upon the assertion that Connor, in returning to the hospital, engaged in a purely personal venture, such assertion serves to distinguish that decision from the present case; we have here determined that McCarty returned to the employer's premises to resume an activity which fell within the course of his employment.

[9]We need not, therefore, confront the difficult problem of determining whether McCarty's ingestion of alcohol *before* 5 p.m. was a contributing cause of his death.

practices, and his failure to terminate them, which makes the special hazard thereby involved incidental to his particular employment and, as such, a source of compensable injuries. . . .'" (120 Cal.App.2d at p. 665, quoting 1 Campbell, Workmen's Compensation (1935) pp. 203-204 (italics added by the Court of Appeal); see Larson, *Intoxication as a Defense in Workmen's Compensation* (1974) 59 Cornell L.Rev. 398, 415-416.)

The board, in rejecting applicant's contention that the employer should be estopped to raise the defense of intoxication, reasoned that the elements of estoppel were not present since McCarty did not rely on some *promise* of his employer. The cases, however, do not call for an express representation by the employer in order to establish an estoppel; as stated in *Tate* v. *Industrial Acc. Com., supra,* 120 Cal.App.2d at page 665, the employer's tacit approval and consent amount "to an implied representation that the employer will not hold it against the employee if he drinks, and will not deprive him of his job or of compensation benefits if he does so."

We have no doubt but that McCarty here relied upon such an implied representation of his employer. Nothing in the record suggests that he would have remained at the company office, drinking the company's liquor, without the permission and approval of the owners. We conclude that on the undisputed facts the elements of estoppel, including both representation and reliance, are established as a matter of law.

The board's further argument that imposition of estoppel would produce a "windfall" benefit to applicant falls equally wide of the mark; the compensation to applicant for the loss of her husband, and of his earnings, is no "windfall." To place upon the employer, who encouraged McCarty's drinking and then permitted him to drive home despite his obvious intoxication, the responsibility for the ensuing fatality, and the resultant duty to compensate the widow, accords fully with the objectives of the workmen's compensation laws. (See Lab. Code, § 3202; Cal. Const., art. XX, § 21.)

The decision of the Workmen's Compensation Appeals Board is annulled and the cause remanded to that board for further proceedings consistent with the views expressed herein.

Wright, C. J., McComb, J., Mosk, J., Burke, J., Sullivan, J., and Clark, J., concurred.