[Civ. No. 69343. Second Dist., Div. Four. Mar. 22, 1985.]

MICHAEL H. WANK et al., Plaintiffs and Appellants, v.
RICHMAN & GARRETT, Defendant and Respondent.

COUNSEL

Reinis & Fink and Gerald Fink for Plaintiffs and Appellants.

Jack W. Henriksen for Defendant and Respondent.

OPINION

**McCLOSKY, J.**—Plaintiffs Michael H. Wank and Georgette B. Wank appeal from the judgment and from the denial of their motion for judgment notwithstanding the verdict or in the alternative for a new trial.[1]

FACTS

Through this action plaintiffs seek recovery of damages for the injuries they sustained when a car driven by one Walter Appling collided with the car in which they were occupants. On November 19, 1976, Mr. Appling was employed as an attorney for defendant law firm of Richman & Garrett. Beginning at approximately 10 a.m. that day, Mr. Appling attended a meeting in his capacity as cocounsel for a client of that law firm. The meeting ended at approximately 12:30 p.m. and Mr. Appling was invited to lunch by one Mr. Wilson, a representative of the firm's client. At approximately 1 p.m. Mr. Appling and others who had attended the meeting gathered for lunch at the Beverly Wilshire Hotel.

During the lunch, Mr. Appling had several alcoholic drinks, although he did not recall specifically how many. Between 3:30 and 4 o'clock that after-

---

[1]An order denying a motion for new trial is not appealable. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 71, p. 4084.) An order denying a motion for judgment notwithstanding the verdict is appealable. (Code Civ. Proc., § 904.1, subd. (d).) Plaintiffs raise no contention, however, with regard to the propriety of that order. We, therefore, dismiss the appeal insofar as it purports to challenge the trial court's order denying the motions for new trial and judgment notwithstanding the verdict.

noon, he telephoned his office and spoke to one Mr. Potts, a partner of the law firm, to advise him that he would not be coming back to the office that day. Mr. Potts testified that there was something about Mr. Appling's speech which led him to believe that Mr. Appling was intoxicated and he therefore asked Mr. Appling to stay where he was in order to allow someone from the firm to pick him up. Mr. Appling rejected Mr. Potts' suggestion and stated that he was going to rejoin the group, but instead of doing so he left the hotel. Mr. Appling did not recall that he had any other firm business that afternoon.

Mr. Appling recalls leaving the hotel parking lot but has no other recollection about that afternoon until his recollection of applying his brakes in an attempt to avoid hitting the automobile which plaintiffs were occupying. That accident occurred at approximately 6:30-6:45 p.m. Mr. Appling does not know where he was going at the time of the accident. He testified, however, that he was going in a direction opposite to that which would take him to his house. He had no knowledge of any business reason for driving in that direction. The evidence adduced at trial was that prior to the accident, which is the subject of this suit, Mr. Appling had been involved in another accident that afternoon in the parking lot of Musso and Franks, a Hollywood restaurant, which serves alcoholic beverages. Mr. Appling did not recall that accident nor did he recall whether he had gone inside that restaurant.

Mr. Potts testified that one of the purposes for having lunch with Mr. Wilson was to solidify the firm's business with an important client. Mr. Richman, a senior partner in defendant law firm, testified that the firm's policy with regard to drinking with a client was to nurse a drink as long as possible.

Dr. Margolis, an expert, testified on behalf of plaintiff that at the time of the accident Mr. Appling's blood alcohol level was .21 percent.

Prior to the trial, all plaintiffs settled with all defendants except for defendant Richman & Garrett. The remaining parties stipulated, and the trial judge ordered, that the trial be bifurcated so that the sole issue to be litigated in the liability phase of the trial was whether Mr. Appling was acting in the course and scope of his employment at the time of his accident with plaintiffs. The matter was tried before a jury which returned a verdict against plaintiffs. Plaintiffs appealed from the judgment entered on that verdict.

## DISCUSSION

### I

Plaintiffs contend that the trial court erred by refusing to give five of their proffered jury instructions, all of which they contend concern the issue of

whether Mr. Appling was acting in the course and scope of his employment at the time of the subject accident.

■ "When a party requests an instruction in support of a theory advanced by him, he is entitled to have that instruction given to the jury if supported by the evidence and in accord with applicable law." (*Montez* v. *Ford Motor Co.* (1980) 101 Cal.App.3d 315, 321 [161 Cal.Rptr. 578]; *Titus* v. *Bethlehem Steel Corp.* (1979) 91 Cal.App.3d 372, 380 [154 Cal.Rptr. 122].) Furthermore, "[a] trial court should not require a party to rely on abstract generalities in presenting its legal theory of the case to the jury, but should instruct the jury on vital issues in terms that relate to the particular case before it." (*Self* v. *General Motors Corp.* (1974) 42 Cal.App.3d 1, 10 [116 Cal.Rptr. 575].)

In the case at bench, the instructions the court gave with regard to course and scope of employment were from BAJI instructions Nos. 13.00, 13.01 and 13.02. The court instructed the jury: "One is the agent of another person at a given time if he is authorized to act for or in place of such person. For the purposes of this trial, the term agent includes servants and employees, and the term principal includes employers. It is not necessary that a particular act or failure to act be expressly authorized by the principal to bring it within the scope of the agent's authority or employment. Such conduct is within the scope of his authority or employment if it occurs while the agent is engaged in the duties which he was employed to perform and relates to those duties.

"Conduct for the benefit of the principal which is incidental to, customarily connected with, or reasonably necessary for the performance of an authorized act is within the scope of the agent's authority or employment.

"When an agent is acting on his principal's behalf and within the scope of his authority, if while so engaged he also and incidentally attends to some matter strictly personal to himself, his doing so does not break the agency relation so as to release the principal from responsibility for the agent's conduct.

"On the other hand, when an agent departs or substantially deviates from the business or service of his principal, and pursues some activity or object not for his principal and not reasonably embraced within his employment, the principal is not responsible for anything done or not done in such activity.

"The defendant Richman and Garrett has been sued on the theory that it was the principal for whom Walter Appling, who is not a party, was acting

as agent within the scope of his employment at the time of the events out of which the accident occurred.

"If you find that Walter Appling was the agent of defendant Richman and Garrett and was acting within the scope of his employment at such time, then any act or admission of Walter Appling at that time was in law the act or omission of defendant Richman and Garrett.

"However, if you find that at said time Walter Appling was not the agent of the defendant or was not acting within the scope of his employment, then you must find that defendant is not liable."

Plaintiffs first urge that the trial court erred by failing to give its proffered instruction that "[a] proximate cause of an injury is a cause which, in natural and continuous sequence, produces the injury, and without which the injury could not have occurred."

The court rejected this instruction because defendant stipulated that Mr. Appling's negligence was the proximate cause of plaintiffs' injury, thereby removing proximate cause as an issue from this case.[2]

Plaintiffs offered this instruction, however, in order to allow the jury to determine that Mr. Appling's negligent driving was proximately caused by his becoming intoxicated during the luncheon earlier in the day. In support of the propriety of this instruction, plaintiffs rely on *McCarty* v. *Workmen's Comp. Appeals Bd.* (1974) 12 Cal.3d 677 [117 Cal.Rptr. 65, 527 P.2d 617].) In *McCarty,* the court was presented with the question of whether the surviving spouse of an employee is entitled to death benefits under the workmen's compensation act when the decedent is killed in an automobile accident while driving home in an intoxicated state from an office Christmas party.

In resolving this issue the court analyzed cases which interpreted Labor Code section 3600,[3] which section contains the standard for determining whether an injury is compensable under the workmen's compensation act.

---

[2]The record reflects that while the court was reluctant to give this instruction it was inclined to give it until plaintiffs acquiesced in the court's reasoning as to why it was not necessary. While this may have constituted a waiver of plaintiffs' right to contend the trial court erred in refusing to give this instruction we review and reject plaintiffs' assertion on its merits.

[3]Labor Code section 3600 provides in pertinent part: "(a) Liability for the compensation provided by this division . . . shall, without regard to negligence, exist against an employer for an injury sustained by his or her employees arising out of and in the course of the employment and for the death of any employee if the injury proximately causes death, in those cases where the following conditions of compensation occur: . . . [¶] (3) Where the injury is proximately caused by the employment, either with or without negligence."

In determining that recovery was warranted, the *McCarty* court reasoned that although Mr. McCarty was killed while driving home from his place of employment, the "going and coming rule" did not preclude compensation because, "if the proximate cause [of his injuries] is of industrial origin, the time and place of injury or death even if foreign to the premises does not serve to nullify recovery." (*McCarty* v. *Workmen's Comp. Appeals Bd.,* *supra,* 12 Cal.3d at p. 681.)

The court then concluded that Mr. McCarty's intoxication was industrial in origin and that that intoxication was the proximate cause of Mr. McCarty's death.

The proximate cause analysis employed by the *McCarty* court is a method the courts have used to determine whether the requisite causal connection exists between the employee's injuries and his employment to satisfy the standard contained in Labor Code section 3600, so as to warrant recovery of workmen's compensation. (See 2 Witkin, Summary Cal. Law (8th ed. 1973) Workmen's Compensation, §§ 136-137, pp. 966-968.)

■ While the "'arising out of and in the course of employment'" test used in the workmen's compensation area is similar to the "'scope of employment'" test used in the respondeat superior doctrine, the two tests are not identical. (*Hinman* v. *Westinghouse Elec. Co.* (1970) 2 Cal.3d 956, 962 [88 Cal.Rptr. 188, 471 P.2d 988], fn. 3 [88 Cal.Rptr. 188, 471 P.2d 988]; *Ducey* v. *Argo Sales Co.* (1979) 25 Cal.3d 707, 722 [159 Cal.Rptr. 835, 602 P.2d 755].)

"There is a marked conceptual difference in the rationale imposing liability on the employer under workers' compensation laws for injuries suffered by his employee on the one hand and, on the other, the rationale imposing liability on the employer to the public in general for the negligent acts of his employee under the doctrine of respondeat superior. In the first instance, the employer under the workers' compensation laws is made liable for injuries sustained to his employee irrespective of fault. Under general tort principles, on the other hand, fault is still one of the fundamental bases for imposing liability. The primary object for an award of damages in a civil action and the fundamental principle or theory on which such an award is based is just compensation or indemnity for loss or injuries sustained by a complaint. [Citation.] Other considerations are involved in an award under the workers' compensation laws.

"In the light of these conceptual differences, it has been held that the authorities interpreting the words 'arising out of and occurring in the course of his employment' for the purpose of determining liability under the work-

ers' compensation laws are not controlling when the test of liability is in the interpretation of the words 'acting within the scope of his employment' under the doctrine of respondeat superior. (*Harris* v. *Oro-Dam Constructors* (1969) 269 Cal.App.2d 911, 914, 915 [75 Cal.Rptr. 544].)

" 'Although a healthy symbiosis is possible, precedents developed in one field should not be injected into another without recognition of the separate principles prevailing in each.' (*Id.*, at p. 914.)

" ' ' "Scope of employment" ' ' defines a more restricted area of employee conduct than the phrase ' ' "arising out of and in the course of employment." ' ' [Citations.] Thus, an employee can suffer a compensable injury under workers' compensation but not be within the scope of employment. [Citation.] If an injury is within the 'scope of employment,' it will probably be 'arising out of and occurring in the course of employment'; however, the reverse is not true. While the tests for liability under workers' compensation and vicarious liability of the employer for torts of the employee are closely related, the courts recognize a difference. [Citations.]

"Thus while workers' compensation cases can be helpful in determining vicarious liability of the employer for torts of the employee, such cases are not controlling." (*Church* v. *Arko* (1977) 75 Cal.App.3d 291, 298-300 [142 Cal.Rptr. 92]; fns. omitted.)

 Due to· these differences, we conclude that the proximate cause analysis employed by the *McCarty* court is insufficient by itself to find an injury compensable under the doctrine of respondeat superior. In addition to a causal connection between the plaintiffs' injuries and Mr. Appling's employment, it was also necessary for plaintiffs to show that Mr. Appling's conduct was foreseeable by the defendant law firm. (*Rodgers* v. *Kemper Constr. Co.* (1975) 50 Cal.App.3d 608, 618 [124 Cal.Rptr. 143]; *Harris* v. *Trojan Fireworks Co.* (1981) 120 Cal.App.3d 157, 163 [174 Cal.Rptr. 452].) "Foreseeable is here used in the sense that the employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among the other costs of the employer's business." (*Harris* v. *Trojan Fireworks Co., supra,* 120 Cal.App.3d at p. 163.)

In *Harris,* the survivors of one James Harris brought an action for wrongful death as a result of an automobile accident Mr. Harris was involved in with one Anthony Barajas, an employee of the Trojan Fireworks Company. Mr. Harris' survivors sued Trojan upon the theory that it was vicariously liable for Mr. Barajas' negligence because at the time of the accident he was in the course and scope of his employment. At the time of the collision, Mr. Barajas was driving home in an intoxicated state from an office Christ-

mas party. The *Harris* court concluded that "plaintiffs have pleaded sufficient facts, which, if proved, would support a jury's determination that Mr. Barajas' intoxication occurred at the Christmas party and that his attendance at the party as well as his state of intoxication occurred within the scope of his employment. That he would attempt to drive home while still intoxicated and might have an accident was foreseeable . . . ." (120 Cal.App.3d at p. 165.) Accordingly, the trial court reversed the order of dismissal which resulted from the trial court's sustaining of the demurrer.

In the case at bench the subject proximate cause instruction did not also instruct the jury as to foreseeability by the defendant law firm, nor did it contain a full and complete statement of the law applicable to the issues raised. (*Foster* v. *Gillette Co.* (1979) 100 Cal.App.3d 569, 575 [161 Cal.Rptr. 134].)

Moreover, defendant having conceded that Mr. Appling's conduct was the proximate cause of injury to the plaintiffs, the sole issue being tried in the liability phase of the trial was whether Mr. Appling was acting in the course and scope of his employment. The court, therefore, did not err in rejecting that instruction.

■ Plaintiffs next urge that the trial court erred by refusing to give the following instructions which they proffered: "Under the doctrine of respondeat superior, an employer is vicariously liable for the torts of his employees' [*sic*] committed within the scope of employment, and, the employer's liability should extend beyond his actual or possible control over the employees to include risks inherent in or created by the enterprise. The mere fact that the accident occurred after working hours does not compel the conclusion that it occurred outside the scope of employment. If an employee is within the scope of his employment when he inflicts injuries, the fact that the automobile which caused the injury belonged to the employee will not relieve the employer from liabilities if the employee's use of his car was with the express or implied consent of the employer. Where social or recreational pursuits are endorsed by the express or implied permission of the employer, if such activities have become an incident of the employment relationship, an employee engaged in such pursuits after working hours is still acting within the course and scope of his employment."

While these requested instructions are correct statements of the law they should not have been given in the form submitted because they are argumentative, incomplete and slanted. They could, however, with some effort have been made proper instructions applicable to the facts of the case. (See *McCarty* v. *Workmen's Comp. Appeals Bd.*, *supra*, 12 Cal.3d at pp. 681-682; *Rodgers* v. *Kemper Constr. Co.*, *supra*, 50 Cal.App.3d at p. 618;

*Boynton* v. *McKales* (1956) 139 Cal.App.2d 777, 790 [294 P.2d 733].) These instructions all related to the primary theory of plaintiffs' case which was that Mr. Appling was acting in the course and scope of his employment with defendant while he was driving in an intoxicated state due to his consumption of alcohol at the luncheon earlier in the day,[4] while the BAJI instructions the trial court gave did not refer to this theory of plaintiffs' case with particularity but did so in more abstract terms.

The general rule is that "it is the responsibility of the trial court to instruct the jury on the controlling legal principles applicable to a case. . . . The existence of this 'responsibility,' however, does not itself define its parameters, and we hold that it is not absolute." (*Roberts* v. *City of Los Angeles* (1980) 109 Cal.App.3d 625, 632 [167 Cal.Rptr. 320].) In *Pedesky* v. *Bleiberg* (1967) 251 Cal.App.2d 119 [59 Cal.Rptr. 294], the appellate court, reiterating that general rule, held that the plaintiff therein was "entitled to have every theory of her case submitted to the jury in accordance with the evidence [citations], and the trial court must, when requested, instruct on all vital issues involved." (*Id.*, at p. 123.) Division Five of this District noted in *Roberts,* however, "that an erroneous, misleading or incomplete instruction may be refused by the court, and that the latter is under no duty to modify such instruction or give others in its place, '*"as long as the jury is properly instructed as to the law of the case."*' (Italics in original. *Id.* at p. 125, quoting *Fibreboard Paper Products Corp.* v. *East Bay Union of Machinists* (1964) 227 Cal.App.2d 675, 717 [39 Cal.Rptr. 64].)" (109 Cal.App.3d at p. 635, fn. 11.)

That general rule in practical application should not require a party to rely on abstract generalities where the abstract generalities are inadequate to cover the parties' theories of the case, but should result in instructing the jury on the vital issues of the particular case. (*Self* v. *General Motors Corp.*, *supra,* 42 Cal.App.3d 1, 10.)

In dictum in *Lysick* v. *Walcom* (1968) 258 Cal.App.2d 136, 157-158 [65 Cal.Rptr. 406, 28 A.L.R.3d 368], it was stated that "[i]n the instant case it was incumbent upon the trial court properly to instruct the jury on the controlling legal principles applicable to the case so that the jury would have a complete understanding of the law applicable to the facts; and the court was not relieved of this responsibility even though faulty or inadequate instructions were submitted by the parties or instructions were not submitted

---

[4]The issue of whether plaintiffs' cause of action is barred by the "going and coming rule" has not been raised. We therefore need not, and do not, address whether the application of this rule to the case at bench affects plaintiffs rights to recover from defendant. (See Comment, *Employer Liability for a Drunken Employee's Action Following an Office Party: A Cause of Action Under Respondeat Superior* (1982) 19 Cal. Western L.Rev. 107.)

by the parties on the vital issues at all." (Accord *Trejo* v. *Maciel* (1966) 239 Cal.App.2d 487, 498 [48 Cal.Rptr. 765]; cf. *Herbert* v. *Lankershim* (1937) 9 Cal.2d 409, 482 [71 P.2d 220]; *Roberts* v. *City of Los Angeles, supra,* 109 Cal.App.3d 625, 632.)

To what extent then can the author of an improperly drawn instruction shape or limit the trial court's responsibility to instruct the jury on all vital issues to a case? Certainly if the defect can be cured with a word or two the change should be made by the trial judge in order to state the vital controlling principles, absent any attempt by the author of the proffered instructions to mislead the court or jury by resorting to equivocal or ingenuously phrased requests (*Herbert* v. *Lankershim, supra,* 9 Cal.2d 409, 482.) On the other hand, as the appellate court noted in *Gagosian* v. *Burdick's Television & Appliances* (1967) 254 Cal.App.2d 316, 318 [62 Cal.Rptr. 70], with regard to redrawing instructions: "There is neither reason nor justification for compelling a trial judge to act as a sort of advisory or 'backup' counsel, with all the frustration of the employed attorneys' trial strategy and tactics which such a holding could encompass."

■■■ Where, as in the case at bench, the modification to the proffered instructions require some major changes to cure their argumentative slanted nature such changes are best left to counsel submitting the instructions. It would not serve the impartial role of the trial judge to have made such major changes, particularly where the BAJI instructions adequately, if not ideally, stated "the principles of law applicable to the key factual issue presented." (See *Kelly* v. *Trans Globe Travel Bureau, Inc.* (1976) 60 Cal.App.3d 195, 204 [131 Cal.Rptr. 488].)

## II

■ Plaintiffs next contend that defendant's counsel committed misconduct both in his opening statement by stating "[i]f you have decided liability, then you will come back and you may sit for eight weeks, decide the issue of damages" and in his closing argument by stating that "the plaintiff has built this case up" and it will take "months to try . . . weeks to try."

Plaintiffs' counsel objected to, and the court sustained objections to, both of the foregoing statements. After the first statement the court admonished the jury "you know the case is bifurcated, you know that the case either proceeds or doesn't proceed, depending upon the verdict. [¶] You are going to be asked to decide this part of the case based on the evidence, and you all told me that, in the past when we were picking the jury, that you would not let any personal matters with which you are involved influence you in

whether you decide this case for the plaintiff or for the defendant in the first phase of it."

While the aforesaid remarks of defendant's counsel constituted misconduct, the court's admonition along with the court's questioning of each juror individually, prior to the commencement of trial, as to the juror's availability for a prolonged trial, cured any potential prejudice which might have been caused by those remarks. Accordingly, we are convinced that that misconduct, did not substantially affect the rights of the parties, or result in a miscarriage of justice. They, therefore, do not warrant a reversal of the judgment. (Cal. Const., art. VI, § 13; Code Civ. Proc., § 475; *Paolini* v. *City & County of S. F.* (1946) 72 Cal.App.2d 579, 588 [164 Cal.Rptr. 916].)

The appeal of the order denying the motion for new trial and the motion for judgment notwithstanding the verdict is dismissed.

The judgment is affirmed.

Woods, P. J., and Shumsky, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.