[No. B024979. Second Dist., Div. Six. Oct. 2, 1987.]

WEST AMERICAN INSURANCE COMPANY, Plaintiff, Cross-defendant and Respondent, v.
CALIFORNIA MUTUAL INSURANCE COMPANY, Defendant, Cross-complainant and Appellant.

316

**COUNSEL**

Muegenburg, Norman & Dowler and Richard M. Norman for Defendant, Cross-complainant and Appellant.

Alan E. Wisotsky and Martin J. McDonagh for Plaintiff, Cross-defendant and Respondent.

**OPINION**

**GILBERT, J.**—Two insurance companies, West American and California Mutual, sought a declaratory judgment assigning responsibility for defending and indemnifying the insured in a personal injury suit. The trial court determined that an employment exception in West American's policy relieved it of any duty to defend or indemnify, but that a business pursuit exception in the California Mutual policy did not apply under the circumstances of the injury. California Mutual was therefore held to have the sole responsibility to defend and indemnify the insured.

California Mutual appeals, arguing that there was insufficient evidence before the trial court to find that the employment exclusion was triggered, relieving West American of its contractual duties. California Mutual also argues that there was insufficient evidence to support the trial court's conclusion that its business pursuit exclusion did not apply. We agree.

At the time of his injury the employee was engaged in voluntary social activities which did not arise out of and in the course of his employment, but which did fall within the business pursuits of the insured. The judgment is reversed. West American, rather than California Mutual, must defend and indemnify the insured.

### Factual and Procedural History

John A. Clapham is a cement and masonry contractor who operates his business out of his Simi Valley home. His employees would assemble at his home at approximately 6 a.m., gather the trucks, tools and plans necessary

for the day's construction jobs, and then drive to the jobsites. At the end of the workday, Clapham's employees would return to the Clapham residence before quitting.

Clapham had converted his garage into a den, equipped with a pool table and a refrigerator. On Fridays, which was payday, Clapham would leave the jobsite early to come home and make out his payroll. His employees would gather in the den while waiting for their pay, playing pool and dice games and drinking beer furnished by Clapham. Once paid, the employees were free to leave, and many did. Others remained to continue drinking and playing pool and dice. Clapham used this weekly gathering to foster better relations with his employees.

May 18, 1984, was a typical payday. Clapham paid his employees between 3:30 and 4 p.m. Among the employees remaining after receiving their pay that day were Rafael Iriarte and Iriarte's brother, Jesus. Also present were Francisco Gamboa, a former employee of Clapham, and his brother, Ismael.

Shortly after 8 p.m., during a dice game in the den, a fight broke out between Gamboa's brother, Ismael, and Iriarte's brother, Jesus. Both Gamboa and Iriarte became involved in the fray and suffered personal injuries. Gamboa and Iriarte each filed lawsuits against Clapham, alleging, inter alia, that Clapham negligently served alcohol and failed to control the people on his premises.

Clapham retained counsel, filed answers to the two suits, and made demand upon California Mutual Insurance Company (Cal Mutual) and West American Insurance Company (West American) to defend and indemnify him in these actions.

In 1983, Cal Mutual issued to Clapham a homeowners insurance policy covering liability for bodily injury and obligating the company to defend against a claim or suit for damages because of bodily injury. The policy specifically excludes coverage for bodily injury "arising out of business pursuits" of Clapham.

West American issued a comprehensive general liability insurance policy in 1983 covering Clapham's liability for bodily injury in respect to the conduct of his sole proprietorship cement and masonry business. The West American policy also includes an obligation to defend against any bodily injury suit. This policy expressly excludes coverage for "bodily injury to any

employee of the insured arising out of and in the course of his employment by the insured . . . ."

West American filed a complaint for declaratory relief against Cal Mutual, and Cal Mutual cross-complained. Each denied an obligation to defend or indemnify Clapham in either action.

In its statement of decision, the trial court found that, disregarding the exclusions, the policies of both West American and Cal Mutual provide coverage to Clapham against Iriarte's and Gamboa's claims, and that Gamboa's claim was covered by both policies.

The court concluded that Iriarte's injury arose out of and in the course of his employment, but not out of Clapham's business pursuits. Applying these findings to the exclusion clauses of both policies, the court found (1) West American was relieved of any duty to defend and indemnify Clapham in regard to the Iriarte injury and (2) Cal Mutual had the sole responsibility to do so.

On appeal, Cal Mutual contends that the evidence was insufficient to support the lower court's findings. Cal Mutual argues that Iriarte was injured while drinking and gambling on Clapham's premises after work hours, not while rendering service for his employer pursuant to the terms of employment. Thus, the injuries did not arise out of and in the course of Iriarte's employment by Clapham, but they did arise out of Clapham's business pursuit. If true, the obligation to defend and indemnify Clapham would not lie with Cal Mutual, but with West American.

Alternatively, Cal Mutual argues that if Iriarte's injury did arise out of his employment, then it must necessarily also have arisen out of Clapham's business pursuit. This would result in neither insurance policy covering Clapham for the Iriarte injury. (The lower court's findings regarding the Gamboa suit were not appealed.)

DISCUSSION

I. *Did Iriarte's injury arise "out of and in the course of" his employment?*

■ Cal Mutual correctly points out that merely because Iriarte was Clapham's employee and was on Clapham's business premises at the time of the altercation, does not establish that Iriarte was engaged in Clapham's employment when injured, or that his injuries arose out of and were

incurred in the course of his employment. (*Artukovich* v. *St. Paul-Mercury Indem. Co.* (1957) 150 Cal.App.2d 312, 324 [310 P.2d 461]; 12 Couch on Insurance (2d ed. 1981) § 44A:68, p. 108.) "Everyone who is engaged in the employment of the insured would be its employee, but not every employee is engaged in the employment of the insured all the time." (*Artukovich, supra,* at p. 324.)

This principle of law, however, does not end our inquiry. The fight resulting in Iriarte's injuries did not take place during working hours nor in the course of providing services to Clapham. ▉ Still unanswered is the question whether at the time of the injury Iriarte was in some other manner "engaged in the employment of the insured . . . ." (*Ibid.*)

Cal Mutual argues that to come within the employment exclusion, the injured party must, at the time of injury, "be *rendering service* for his employer *pursuant to the terms of his employment*" and must be *"engaged in activities necessary and incidental to the work"* the employee was hired to do.

Cal Mutual cites no authority for this purported rule, and West American, in arguing that Cal Mutual's proposition is antiquated and overrestrictive, relies on workers' compensation and respondeat superior cases. We agree with the parties' implicit concession that there is no case law defining the phrase "arising out of and in the course of employment" as it appears in private liability insurance policies. Even though this phrase appears in workers' compensation and respondeat superior law, West American's reliance on these cases is misplaced. The policies and rules of construction underlying private liability insurance law differ from those in workers' compensation and respondeat superior situations. The phrase must be interpreted in its correct context.

### A. *Workers' Compensation Law*

The employment exclusion clause at issue here is identical to the statutory language establishing a workers' compensation claim. In order to be compensable under workers' compensation, the injury must "[arise] out of and [be] in the course of the employment . . . ." (Lab. Code, § 3600; *State Compensation Ins. Fund* v. *Workers' Comp. Appeals Bd.* (1982) 133 Cal.App.3d 643, 652 [184 Cal.Rptr. 111].) ▉ "In the course of employment" generally refers to the time and place of the injury, and means that the injured must be engaged in the work he has been hired to perform, while the phrase "arise out of employment" refers to a causal connection between the injury and the employment. (*State Compensation Ins. Fund* v. *Workers'*

*Comp. Appeals Bd., supra,* at p. 652; 2 Witkin, Summary of Cal. Law (9th ed. 1987) Workers' Compensation, § 185, p. 749.)

In *McCarty* v. *Workmen's Comp. Appeals Bd.* (1974) 12 Cal.3d 677 [117 Cal.Rptr. 65, 527 P.2d 617], the Supreme Court construed this terminology so to award workers' compensation to the survivor of an employee who died in a car wreck after becoming intoxicated at an office Christmas party.

The court considered whether the employee's intoxication "arose in the course of employment," and concluded that "[e]mployee social and recreational activity on the company premises, endorsed with the express or implied permission of the employer, falls within the course of employment if the 'activity was conceivably of some benefit to the employer . . .' [citations, fn. omitted]" or otherwise was a "customary incident of the employment relationship." (*Id.,* at pp. 681-682.) The *McCarty* court noted that by purchasing intoxicants with company funds and permitting after-hours drinking parties on business premises, employers benefit by fostering company camaraderie and the discussion of company business. (*Ibid.*)

The holding of *McCarty* is cast in doubt by Labor Code section 3600, subdivision (a)(9) (formerly (a)(8)), which excludes from liability under workers' compensation those injuries which "arise out of voluntary participation in any off-duty recreational, social, or athletic activity not constituting part of the employee's work-related duties, *except where these activities are a reasonable expectancy of, or are expressly or impliedly required by, the employment.*" (*Ezzy* v. *Workers' Comp. Appeals Bd.* (1983) 146 Cal.App.3d 252, 259 [194 Cal.Rptr. 90]; see 2 Witkin, *supra,* at pp. 783-786.) As will be seen, the *McCarty* test survives in the realm of respondeat superior.

### B. *Respondeat Superior*

The doctrine of respondeat superior holds an employer liable for torts of an employee committed within the scope of his employment, and the rationale underlying the doctrine is, in some respects, similar to that underlying workers' compensation. (*Perez* v. *Van Groningen & Sons, Inc.* (1986) 41 Cal.3d 962, 967 [227 Cal.Rptr. 106, 719 P.2d 676].)

The test for determining whether an employer is vicariously liable for the torts of his employee is "closely related to the test applied in workers' compensation cases for determining whether an injury arose out of or in the course of employment." (*Rodgers* v. *Kemper Constr. Co.* (1975) 50 Cal.App.3d 608, 619 [124 Cal.Rptr. 143].) Under California law, an em-

ployer is liable for risks "arising out of the employment.'" (*Perez* v. *Van Groningen & Sons, Inc., supra,* 41 Cal.3d at p. 968.)

In *Rodgers, supra,* the court announced two tests for determining whether a risk arises out of employment. One test is foreseeability, that is, whether "in the context of the particular enterprise an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business." (*Rodgers* v. *Kemper Constr. Co., supra,* 50 Cal.App.3d at p. 619; *Perez* v. *Van Groningen & Sons, Inc., supra,* 41 Cal.3d at p. 968.)

The second test *Rodgers* "borrowed" from *McCarty.* It states that "where social or recreational pursuits on the employer's premises after hours are endorsed by the express or implied permission of the employer and are 'conceivably' of some benefit to the employer *or,* even in the absence of proof of benefit, if such activities have become 'a customary incident of the employment relationship,' an employee engaged in such pursuits after hours is still acting within the scope of his employment. [Citation.]" (*Rodgers* v. *Kemper Constr. Co., supra,* 50 Cal.App.3d at p. 620; *Childers* v. *Shasta Livestock Auction Yard, Inc.* (1987) 190 Cal.App.3d 792, 804 [235 Cal.Rptr. 641].)

Even though the *McCarty* test no longer applies in construing workers' compensation liability because of Labor Code section 3600, subdivision (a)(9), it has been adopted as a test in establishing liability under respondeat superior. (*Childers* v. *Shasta Livestock Auction Yard, Inc., supra,* 190 Cal.App.3d 792, 804.)

### C. *Private Liability Insurance*

Both *McCarty* and *Rodgers* broadly construe the phrase "[arise] out of or be in the course of employment." Such construction is mandated by statute or by policy. Section 3202 of the Labor Code requires that all reasonable doubts as to whether the injury arose out of employment for workers' compensation purposes are to be resolved in favor of the employee. (Lab. Code, § 3202; *Garza* v. *Workmen's Comp. App. Bd.* (1970) 3 Cal.3d 312, 317 [90 Cal.Rptr. 355, 475 P.2d 451].)

As for respondeat superior, the "principal justification" for the doctrine "'is . . . that the employer may spread the risk through insurance and carry the cost thereof as part of his costs of doing business.'" (*Perez* v. *Van*

*Groningen & Sons, Inc., supra,* 41 Cal.3d at p. 967 quoting *Johnston* v. *Long* (1947) 30 Cal.2d 54, 64 [181 P.2d 645].)

■ Different criteria apply, however, in interpreting private liability insurance policy exceptions. These exceptions should be construed narrowly so to favor the insured, in order to protect the insured's reasonable expectation of coverage. (*Reserve Insurance Co.* v. *Pisciotta* (1982) 30 Cal.3d 800, 808 [180 Cal.Rptr. 628, 640 P.2d 764]; *Artukovich* v. *St. Paul-Mercury Indem. Co., supra,* 150 Cal.App.2d at p. 324.)

■ With this rule of construction in mind, the evidence here is insufficient to support the trial court's determination that the injury arose out of and in the course of Iriarte's employment. It may be true that but for Iriarte's employment he would not have been at Clapham's that night, and in that sense the injury "arose out of" the employment relationship. But the exclusion also requires that Iriarte be acting "in the course of" his employment when injured, and this prong is not met.

Iriarte was not working, nor was he required to be on Clapham's premises when the injury occurred. He was free to leave, and there is no evidence that continued employment or better working conditions depended on his being at the Friday night parties. Clapham testified at trial that he gave the parties to foster good relations with his employees. This may establish that the gatherings furthered Clapham's business purposes, but not that the employee's were on the job at the time of the injury.

An employee who is doing acts "in the course of [his] employment" is working. It is when the employee is working that the exclusion applies. It would be reasonable for Clapham, the insured, to expect that the employment exclusion in the West American policy not apply to an injury resulting from an argument during a Friday night game of dice. The West American employment exclusion therefore does not apply.

## II. *Did Iriarte's injury arise out of a "Business Pursuit"?*

■ The trial court found that Cal Mutual's "business pursuit" exception did not apply to Iriarte's injury, because Clapham had a "dual purpose"—both business and social—in allowing his premises to be utilized for drinking and gambling. The court found that because the activity giving rise

to the injury was not "wholly dependent" on Clapham's business pursuits, the exclusion did not apply.

"In *State Farm Fire & Casualty Co.* v. *Drasin* (1984) 152 Cal.App.3d 864, 870 [199 Cal.Rptr. 749], it is noted '. . . that applicability of the business pursuit exclusion turns on the motivation for the pursuit[,] . . . the presence of the profit motive carries considerable weight, and that the business engaged in need not be the sole occupation. . . . [¶] Other jurisdictions have defined a business pursuit as a regular activity engaged in for the purpose of earning a profit. . . . "Business," as defined in [California] Revenue and Taxation Code section 6013, "includes any activity engaged in by any person or caused to be engaged in by him with the object of gain, benefit, or advantage, either direct or indirect." The central theme being espoused . . . is regular activity with the motivation for profit or gain.'" (*Fire Ins. Exchange* v. *Jiminez* (1986) 184 Cal.App.3d 437, 442-443 [229 Cal.Rptr. 83].)

There is no doubt that Clapham was engaged in a business pursuit when he invited his employees onto his premises and provided them with beer and recreation. A business pursuit exception is broader than an employment exception. An employer's business pursuit logically includes any activity which arises from and is in the course of an employee's employment.

Clapham testified that his sole purpose in permitting the Friday night custom was to foster better relations with his employees. A happy work force is a benefit to any business undertaking.

Even if the Friday night gathering was partially motivated by social interests, the result would be the same. Nothing in the insurance policy requires that the business pursuit be wholly business related for the exception to apply. West American's reliance on the "concurrent causation" doctrine is misapplied. ■ That doctrine provides for coverage when the injury is caused by a combination of an insured risk and an excluded risk. (*State Farm Mut. Auto. Ins. Co.* v. *Partridge* (1973) 10 Cal.3d 94, 105 [109 Cal.Rptr. 811, 514 P.2d 123].) It concerns multiple causes. (*Farmers Ins. Exchange* v. *Adams* (1985) 170 Cal.App.3d 712, 716 [216 Cal.Rptr. 287].) ■ A double social and business nature of the Friday night activities is not the same as independently operating causes of the injury.

West American's contention that the business pursuit exception is not conspicuous within Cal Mutual's policy is without merit.

We hold that the employment exclusion in the West American policy does not apply, and that the Cal Mutual business pursuit exception does apply. West American, and not Cal Mutual, has the responsibility to defend or indemnify Clapham in the Iriarte suit.

The judgment is reversed. Each party to bear its own costs on appeal.

Stone, P. J., and Abbe, J., concurred.

On October 30, 1987, the opinion was modified to read as printed above.