(No. 7193.   December 22, 1944.)

MAE C. ANDERSON, a widow, mother of the deceased Emil C. Anderson, Respondent, v. R. L. WOESNER, Employer, and IDAHO COMPENSATION COMPANY, Surety, Appellants.

[159 Pac. (2d) 899.]
On Rehearing June 30, 1945.

Ralph S. Nelson for appellants.

Durham and Hyatt for respondent.

AILSHIE, J.—This cause was tried before the Industrial Accident Board and an order was entered, awarding $200 to respondent as burial expenses for Emil C. Anderson, and partial dependency benefits for herself until her death or remarriage not to exceed 400 weeks. From the findings, rulings and award, appellants have appealed.

The Anderson family consisted of the mother and three children, a married daughter and two boys, Emil and a younger son. The father died early in October, 1942. Emil worked for the forest service that summer and contributed to the family support. He had $150 in the bank, which he took out and gave to his mother to pay a grocery bill. During the fall he worked part-time for a grocery store, at $10 a month. This he also gave to his mother; all other money earned by Emil was turned over to her for the maintenance of the family.

July 19, 1943, young Anderson (15 years of age) was employed by Mr. Woesner, chief fire warden for the Potlatch Protective Timber Assn. Anderson's work consisted of piling brush and combatting fires. The foreman under Woesner, in charge of employment, was Mr. Parlevliut. August 11, 1943, Parlevliut started the boys out on the road, each with a particular strip to work on. They had left camp, in a logging truck about 6:30 a. m., and started work about seven o'clock. About an hour later Parlevliut saw Emil "standing with his hand holding on to one of the small trees, looking like he was trying to vomit." Ten minutes later Emil was 50 or 60 feet from Parlevliut going down toward the road. He remarked that he was going in on a truck; Parlevliut advised him to walk. (That was 8:15 a. m.) Anderson walked up the road "not over 40 feet." In the meantime, the foreman saw the truck coming, throwing up lots of dust. He wondered why the truck stopped when going uphill with the load of logs. He went over and saw Emil lying unconscious right behind the hind wheels of the trailer. He did not appear to have been run over, but had been knocked down and had been hit on

the head. He was unconscious from that time on until his death about 9:30 that morning.

Calvin McNeil, a 19-year-old boy, who drove the logging truck for the lumber company, testified that he was coming up the hill with a load and saw Emil ahead of him standing "on the end of the truck shoulder, (a parked truck by the roadside) with his lunch bucket on his arm." On McNeill's truck and trailer was a load of fourteen 16-ft. logs. He signalled to Anderson he would "wait on the flat for him;" he thought he would walk up there. He heard Anderson's "corks on the steel running board" and threw on the air, pulled on the emergency brake and put his foot on the hydraulic brake and stopped. Anderson was lying "about three feet behind the truck" in the rut of the road.

Woesner, as an individual, contracted with the Potlatch Forests, Inc., to pile brush and dispose of slash and brush on lands over which the logging trucks passed. Woesner's foreman, Parlevliut, and men working under him stayed at one camp, called Camp X, which was a Potlatch Forests, Inc., camp located on the North Fork River, in Clearwater county, eighteen miles east of Elk River. The men went out to work on the company's time. They worked eight hours a day. They came in "part on our own time and part on the company's time." On the day of Emil's death, the foreman had given him an hour and a half, making the time 8:25 a. m.

Prior to the particular accident, Woesner and his foreman had never discussed the question of a man getting sick on the job. Woesner testified that he had not learned that it was a general practice at the camps for men to come in on the company's or the employer's time. He had never "discussed that particular phase of the timekeeping with Mr. Parlevliut."

It was stipulated that appellants had knowledge of the accident which consisted of the boy's death; that the claim was filed in proper time.

The decision in this case must turn on two Assignments of Error:

First, "that the injuries caused by the accident above related, arose out of and in the course of deceased's employment with the above named employer. . ." and

Second, "that Mae C. Anderson, from the date of the death of her husband in October, 1942, to and including the date of the death of Emil C. Anderson on August 11, 1943, was 'partially dependent upon the decedent for support.' "

■ Addressing ourselves to the first assignment of error: We have concluded, after a careful examination of the entire record, that there is sufficient evidence to support the finding, that the injuries caused by the accident arose out of and in the course of decedent's employment. It is claimed by appellants, that the case of *Walker v. Hyde,* 43 Ida. 625, 253 P. 1104, should be decisive in this case, and that the application of the rule there announced should be sufficient to reverse the order of the Board. We agree that, strictly and technically applied, the Walker-Hyde case might be decisive herein. We pause and observe, however, that the rule announced in the *Walker v. Hyde* case has been greatly modified in more recent cases. (*Murdoch v. Humes & Swanstrom,* 51 Ida. 459, 6 P. (2d) 472; *Logue v. Independent School District No. 33,* 53 Ida. 44, 21 P. (2d) 534; *Dutson v. Idaho Power Co.,* 57 Ida. 386, at 391, 65 P. 720.)

It is clear that the workman was on the job in the morning as usual; that soon afterwards he was ill and vomiting; that he thereupon started for camp, and while traveling along the road generally used by the employer and employees, he was struck and fatally injured. Whether this accident occurred by reason of the workman trying to swing onto the moving truck, or whether he was struck by the truck or trailer, is not clear; however, that fact would in this case make no material difference in our decision for, after all, it occurred in the course of his employment and may well be attributable to the employment. At any rate, it arose out of the employment.

■ His sudden sickness could not have been foreseen by either him or his employer; on the other hand, it was an incident which arose during the course of employment which might have occurred to him or any other one, or a number of employees. It would, we think, be a too technical application of the rule, to say that this brief space of time, after his taking sick and until the accident occurred was outside the course of the workman's employment and

that no liability attached. He was evidently going to camp where he could or expected to get rest, treatment, and relief. He was to return when able. The fact that the foreman advised him not to take the truck is not sufficient to exonerate the employer of liability to pay compensation. The employer offered him no means of transportation.

Turning our attention now to the second question, as to whether or not Mae C. Anderson was "partially dependent upon the decedent for support", we conclude that the evidence is sufficient to support the finding and conclusion made by the Board. The evidence is undisputed that the boy (employee) was turning over all of his earnings to his mother for support of herself and her family. The fact that she was temporarily employed herself and earning good wages is not sufficient to justify refusal to pay compensation. We had under consideration a kindred issue in *Miller v. G. L. Arnett & Son*, 58 Ida. 420, 426, 74 P. (2d) 177, in which, among other things, we commented:

"There is a wide gulf between a mere existence and a comfortable living. There is an equally broad span between the ways in which different persons or families are accustomed to live and the things it takes to make them comfortable and satisfy their real or imaginary necessities and persistent needs. . ."

While this is another one of the borderline cases in industrial accidents, we are persuaded that the order of the Board should be affirmed. We are admonished by the statute (sec. 70-102, I.C.A.) to liberally construe the law and it has been the uniform practice of this court to exercise that liberality of construction in favor of the employees under the Workmen's Compensation Law. (*McNeil v. Panhandle Lumber Company*, 34 Ida. 773, 203 P. 1068; *Pierstorff v. Gray's Auto Shop*, 58 Ida. 438, 74 P. (2d) 171; *Stover v. Washington County*, 63 Ida. 145, 118 P. (2d) 63; *Flock v. Palumbo Fruit Co.*, 63 Ida. 220, 118 P. (2d) 707.)

Affirmed with costs to respondent.

Holden, C.J., Givens and Dunlap, JJ., concur.

Budge, J., concurs in the conclusion reached.

## ON REHEARING
### June 30, 1945

AILSHIE, C.J.—Appellants filed petition for rehearing in this case which was granted, and the case has been re-argued and resubmitted. We have given the matter further consideration, particularly the contentions made by petitioner, and find no reason for changing the conclusion reached in the original opinion.

Appellants' chief contention is, that the court drew erroneous conclusions from certain evidence appearing from the record. Our further examination of the record convinces us to the contrary. However, appellants are apparently correct in the contention, that the following sentence in the original opinion is erroneous or misleading, namely: "Anderson walked up the road 'not over 40 feet,'" which statement should in fact read: "Anderson walked over to the road about forty feet."

On petition for rehearing appellants complain of the following statement contained in the original opinion:

". . . while traveling along the road generally used by the employer and employees, he was struck and fatally injured", and say: "this statement is not in accordance with the undisputed facts. The Board made a specific finding, as above pointed out (f. 212), that the boy attempted to board the truck."

For the purposes of our decision, it is immaterial as to whether the workman was *struck by the moving truck* or received his injury in *attempting to swing onto the trailer.* We attempted to make that plain by the following statement in the original opinion:

". . . however, that fact would in this case make no material difference in our decision for, after all, it occurred in the course of his employment and may well be attributable to the employment. At any rate, it arose out of the employment."

The fact, that the employee was, or may have been, guilty of negligence, makes no difference as long as he received the injury "in the course of his employment." (*Olson v. Union Pacific R. Co.*, 62 Ida. 423, 428, 112 P. (2d) 1005, and cases therein cited.)

Complaint is also made of the following statement contained in the original opinion: "The employer offered him no means of transportation." The foregoing statement is amply supported by the record and is uncontradicted. The furnishing of transportation might have no significance in this case were it not for the fact, that the *employer had notice of the employee's sickness and that he was quitting work for the purpose of returning to camp for rest or treatment, or both,* and was expected to return to work when able to do so.

The order of the Board is affirmed.

Givens, Holden, and Miller, JJ., concur.

BUDGE, J.—Expressing no opinion on the merits.

This cause was heard before the Industrial Accident Board. From the findings, rulings and award made by the board an appeal was taken to this court, whereupon the cause was duly submitted, taken under advisement, assigned, and thereafter an opinion was handed down. A timely petition for rehearing was filed, duly considered and granted. The cause was reargued and resubmitted, whereupon the writer of the first opinion wrote an opinion on rehearing.

The general rule is that where a rehearing is granted the case stands as though no previous hearing had been had. (3 Am. Jur., sc. 810, p. 352.) Where a rehearing is granted generally the case is before the court for examination and decision as though it had never been considered or decided. (3 Cyc. 219, subd. 6; 4 C.J.S., sec. 1447, p. 2044.) Or, as otherwise stated in *Stoke v. Converse et al,* Ann. Cas. 1913E, 270, granting a rehearing on appeal withdraws the former opinion which becomes devoid of force or authority until subsequently readopted. (*Kroeger v. Twin Buttes R. Co.* (Ariz.), 127 P. 725, Ann. Cas. 1914A, 1289; *Ringling v. Biering* (Mont.), 272 P. 688.)

Under such conditions the case stands as though no previous hearing had been had, and the opinion on rehearing becomes the opinion of the court provided it is concurred in by the court or a majority of the members thereof. A previous concurrence by a Justice is no longer

a concurrence unless he concurs in the opinion on rehearing. (3 Cyc. 219, subd. 7.)

In June 1908, an appeal was taken to this court in the case of *Knowles v. New Sweden Irr. District*, 16 Ida. 217, 101 P. 81. The cause was argued, submitted and taken under advisement, and thereafter an opinion was written reversing the judgment of the trial judge. A petition for rehearing was filed, granted, and the cause was reargued and resubmitted. Thereafter an opinion was written affirming the trial judge. In a separate opinion, one of the Justices concurred in the conclusion reached in the opinion on rehearing. Both the original opinion and the opinion on rehearing were published in the Idaho Reports. The first opinion was no longer of any force or effect as the opinion of the court, and no reason for its publication in the Idaho Reports existed. The opinion on rehearing, when concurred in by the court or a majority thereof, became the opinion of the court.

After careful consideration, I have concluded, advisedly, to refrain from expressing an opinion upon the merits of the case.