706 P.2d 56

**In the Matter of Roderick Wade SNYDER, Deceased:**

**Tamara SNYDER, Claimant-Appellant,**

**v.**

**BURL C. LANGE, INC., Employer, and Employers Insurance of Wausau, Surety, Defendants-Respondents.**

**No. 15076.**

Supreme Court of Idaho.

May 20, 1985.

Rehearing Denied Sept. 30, 1985.

Nick Chenoweth, Orofino, for claimant-appellant.

Max M. Sheils, Jr., of Ellis, Brown, Sheils & Steele, Boise, for defendants-respondents.

BAKES, Justice.

Tamara Snyder appeals from an Industrial Commission order denying her workmen's compensation benefits following the death of her husband. We affirm the Industrial Commission's decision.

The Industrial Commission issued an order which recited the following evidentiary findings. Roderick Snyder was employed by Burl C. Lange, Inc., as a truck driver. Burl Lange is the president of Burl C. Lange, Inc. The company leases a shop which is located outside of Weippe, Idaho. The lease arrangement between Mr. Lange and the lessor was a verbal agreement. The specific boundary of the leased area has never been defined.

A Christmas party was held in the employer's shop on December 21, 1979. The maintenance foreman had the initial idea for the party and discussed it with other employees. Several of the employees then got together to plan the Christmas party for December 21, 1979. Notice of the party was given by word of mouth. Several of these employees contributed money for the purchase of gifts for Burl Lange and his wife. The employees also contributed money for the purchase of alcohol for the party. Additionally, the maintenance foreman sold some old batteries which he owned, using the money from the sale of these batteries to purchase party refreshments. Without Burl Lange's knowledge or permission, another employee also sold some junk batteries which were owned by Burl C. Lange, Inc., and which were lying around the shop. The money derived from the sale of these junk batteries was used to purchase party refreshments.

The commission further found that Mr. Burl Lange never gave his permission or authorization for the party. Although Lange knew about the party, he did not initially plan to attend the party. Less than 20% of the employees did. However, the maintenance foreman requested that Mr. Lange stop by the shop while the party was in progress, since the employees wished to present Mr. Lange with the gifts they had purchased.

The party began in the middle of the afternoon. At approximately 7:00 p.m., Mr. Lange arrived at the shop where the party was being held. At that time the maintenance foreman gave Mr. Lange a Christmas present and a present for Mr. Lange's wife. Mr. Lange had a beer before he left the party. Mr. Lange's total stay at the party was between 20 and 30 minutes. During Mr. Lange's short stay at the party he observed Roderick Snyder and another employee engaged in a wrestling match. However, the two men wrestled for only a short time and then walked arm-in-arm into the shop.

After Mr. Lange departed, Mr. Snyder got involved in several altercations with other employees. He hit one employee over the head with a tire iron and knocked him unconscious. He hit another employee on his hard hat with the tire iron, and the employee responded by hitting Snyder in the face twice and rendering him semi-conscious. Snyder was then carried out of the shop and placed in his pickup truck by four men who were present in the shop. They then returned to the shop to administer aid to the employee who had been knocked unconscious by the tire iron wielded by Mr. Snyder. Subsequently, one of the men attending the party looked outside to check on Mr. Snyder and observed that Mr. Snyder had started up the pickup and was warming the engine. Subsequently, the party ended and the shop was locked by the maintenance foreman. Since Mr. Snyder's pickup was gone when the last men left the shop, the men assumed that Mr. Snyder had driven himself home.

The next day, December 22, 1979, Mr. Snyder's body was found. The examining pathologist testified that Mr. Snyder died of hypothermia. Mr. Snyder's death occurred after he drove out of the shop parking lot down an embankment and then across the road into a field. He then drove back across the road and became stuck in a

creek bed. Mr. Snyder left his vehicle and wandered into a marshy area where he was subsequently overcome. His body was found on property which was owned by the same individual from whom Mr. Lange leased the property on which his shop was located.

■ In reviewing Industrial Commission decisions this Court must determine whether the Industrial Commission's findings of fact are supported by substantial competent evidence. *In re Chavez,* 104 Idaho 279, 281, 658 P.2d 950, 952 (1983); I.C. § 72–732; Idaho Const. Art. 5, § 9. The Industrial Commission's findings of fact will not be disturbed if supported by competent, although conflicting, evidence. *Lampe v. Zamzow's, Inc.,* 102 Idaho 126, 626 P.2d 782 (1981); *Logsdon v. Northern Iron & Metals Co.,* 101 Idaho 74, 76, 608 P.2d 877, 879 (1980). On appeal, the facts and all inferences therefrom must be viewed most favorably to the party who prevailed below. *Higginson v. Westergard,* 100 Idaho 687, 604 P.2d 51 (1979); *Matter of Webber's Estate,* 97 Idaho 703, 551 P.2d 1339 (1976).

Having fully reviewed the record, we have determined that the commission's findings as summarized above are supported by substantial competent evidence. Accordingly, the Industrial Commission's findings of fact will not be disturbed on appeal.

■ Nor do we find error in the commission's legal analysis of those facts. The claimant can only recover workmen's compensation benefits if Mr. Snyder's death arose out of or occurred within the course of his employment. Based upon the findings of fact set forth above, the Industrial Commission determined that Mr. Snyder's death did not arise out of and in the course of his employment.

We find no merit in appellant's argument that the case of *Grant v. Brownfield's Orthopedic and Prosthetic,* 105 Idaho 542, 671 P.2d 455 (1983), released subsequent to the Industrial Commission's decision here, mandates a reversal of this case. Al-though *Grant* was not available for the Industrial Commission's consideration, the Industrial Commission relied upon *Moore's Case,* 110 N.E.2d 764 (Mass.1953), in reaching its conclusion here. Since *Moore's Case* was favorably cited and relied on by this Court in *Grant* as "[o]ne of the more lucid opinions" in this area of the law, there is no indication that the commission incorrectly applied the law in reaching its conclusion here.

*Grant* is also easily distinguishable from this case on the facts. The accidental death of the employee in *Grant* occurred during a traditional annual employer-sponsored Christmas party in which the entire party was planned and paid for by the employer and was deducted on the employer's income tax return as a business expense. The employer expressly stated that the party was to promote employee good will, and company bonuses were traditionally given out at that party. By way of contrast, the Industrial Commission found here that

> "the party was neither arranged by nor paid for by the employer. Rather, it was arranged by a few of the employees. The evidence establishes that there was no employer tradition of an annual Christmas party and that there was no compulsion for the employees to attend the party. It was also established that the employees did not have any expectation of a party, nor did they regard it as an employment benefit to which they were entitled."

The commission further found that the employee's death occurred after the decedent left the party, and that it occurred off of the employer's premises. Those findings are supported by substantial evidence in the record.

Accordingly, we affirm the decision of the Industrial Commission.

DONALDSON, C.J., SHEPARD, J., and WALTERS, J. Pro Tem., concur.

BISTLINE, Justice, dissenting.

In what trial attorneys may see as a further undermining of the intent and pur-

pose of the Idaho Workmen's Compensation law, I.C. § 72–201, the majority, like the Commission, has twisted the facts of this case, thereby making more palatable the denying of compensation to decedent's widow and three minor children. Then, under the ruse of applying the standard of review that this Court must affirm where the findings of fact are supported by substantial and competent evidence, the Court continues to rule in favor of employers by denying benefits under the Workmen's Compensation law. The ultimate ramification of this Court's and the Commission's, propensity to overlook the requisite liberal interpretation of the Workmen's Compensation law, *Stover v. Washington County*, 63 Idaho 145, 118 P.2d 63 (1941); *Anderson v. Woesner*, 66 Idaho 441, 159 P.2d 899 (1944); is that injured workers will forego their options under the Workmen's Compensation law and elect to sue their employers under the common law. The ultimate result could be far more damaging to employers and certainly will disrupt harmonious business relations between employers and employees.

The Court today once again chooses to automatically adopt the Commission's ruling in spite of the fact that the evidence in the record clearly contradicts the findings of the Commission. This Court continues to adhere to an approach the basis of which is to numbly review the Commission's findings and conclusions without regard for the record. No one is suggesting that this Court take over the duties of the Commission in its fact-finding capacity, but it is the role of this Court to examine the record and compare it to the Commission's findings. Moreover, when the Commission makes an error of law it is clearly the function of this Court to correct the situation. Because I believe the Commission has erred in its fact-finding capacity and as a matter of law, I must dissent.

## I.

In Finding of Fact IV the Commission first determined that the maintenance foreman owned the batteries in the shop which were sold to purchase alcohol for the party. The Commission later found that the junk batteries were those of the employer. The testimony is clear that the batteries were the employer's, not the foreman's and that these batteries were sold to purchase refreshments, including alcohol for the party. The Commission's conclusion in section II of the Conclusions of law that the employer neither arranged for nor paid for the party is in direct contravention of the finding that the employer's batteries were used to purchase refreshments. The conclusion is erroneous.

The Commission also found that the batteries were sold without the employer's permission and that the party was never authorized by the employer. What the Commission failed to perceive is that the employer was the corporation, Burl Lange, Inc. Mr. Lange just happens to be the primary shareholder and the corporation's chief executive officer. The fact that the corporation's maintenance foreman arranged the party rather than Mr. Lange does not mean that the employer did not sponsor the party. The deceased was hired by the corporation's maintenance foreman, not by Mr. Lange. When invited to the party arranged by the maintenance foreman the employee had every reason to believe that it was the corporate employer sponsoring the party, not the foreman's personal private affair. And, it is a bit much to say that a party held on the employer's premises by a manager of the business is not an employer-sponsored party. Unless a party directed by a chief executive officer of a large corporation on corporate premises is not ever going to be considered employer-sponsored, then the instant party also was not.

Furthermore, Mr. Lange was well aware that plans for the party had been made and that it was to be held at the maintenance shop of his corporation. He had been asked to attend by one of the employees. And, Mr. Lange was also aware that a similar party had been given the year before at Christmas-time at the corporation's shop. In his position it was certainly with-

in his power to object to any parties on the premises; he could easily have done so in the year in question.

The Commission also found that "Mr. Burl Lange never gave his permission or authorization for the party." While this statement may be technically true on its face, it does not preclude this party from being one sponsored by the corporation, and it overlooks the fact that Mr. Lange acquiesced to a party being held on the premises. To conclude that this was not an employer-sponsored party is erroneous.

The Commission also found that only 20 percent of the employees attended the party in question, suggesting that the employees did not consider the party either an incident or a benefit of employment. This finding of fact is clearly erroneous. The only witness who testified as to the number of employees in attendance estimated 25 persons. All the other witnesses guessed that only 20 percent attended. Burl Lange testified that approximately 50 persons were employed by Burl Lange, Inc. at the time in question. For the Commission to ignore the only testimony as to actual number of employees in attendance is clear error. Twenty percent of 50 employees is ten persons. Burl Lange, three foremen, and Roderick Snyder make four. Then there were two fights between Snyder and others, and at least four men carried Snyder to his vehicle after he was knocked unconscious. The Commission's finding that only 20 percent of the employees attended the party indicates that ten men consumed over $100 in alcohol and refreshments. The Commission's conclusion that the party was not attended by many employees and was not sponsored for the benefit of the employees is also in error.

The Commission also found that the employee died after he left the party and that the body was found on property owned by the individual who leased property to Burl Lange, Inc. The Commission then concluded that because the body was not on the employer's premises, therefore the premises rule was not particularly helpful in deciding this case. Unfortunately, the Commission focused on the wrong event in construing the premises rule. Although there is some doubt as to whether the body was actually located on the employer's premises, it is essentially irrelevant. The location of the body was not the proximate cause of the employee's death. The events which precipitated the employee's death began in the employer's shop: consumption of large amounts of alcohol, fighting and being knocked unconscious, being placed in a cold vehicle by other employees while unconscious. The fact that Roderick Snyder managed to travel another 200 feet before collapsing ignores the reality that when he was placed in his truck by the employees of the company, the die was already cast. He was clearly in a drunken state. He did not even have on an overcoat. And the employees could easily have placed Mr. Snyder in a corner of the heated shop, rather than leave him on the front seat of his truck. One is made to wonder, what if Mr. Snyder, while at work, accidentally swallowed some poison in the premises bathroom when he thought he was taking aspirin, driven home and died in his bathroom? Would this not be an industrial accident for which death benefits could be awarded? The actual location of the body is irrelevant when the injury causing death occurred on the premises of the employer. *McCarty v. Workmen's Compensation Appeals Board,* 12 Cal.3d 677, 117 Cal.Rptr. 65, 527 P.2d 617 (1974); *Satchell v. Industrial Acc. Comm.,* 94 Cal.App.2d 473, 210 P.2d 867 (1949).

In *McCarty, supra,* an employee was killed on the way home from a Christmas party at which he had consumed substantial amounts of alcohol. In deciding that benefits should be awarded the employee's widow, the court focused on the proximate cause of death, not the location of the body. The insurer contended that the going and coming rule precluded recovery because the death occurred in transit. The court, however, ruled that the going and coming rule did "not apply if the approved consumption of alcohol on the employer's premises proximately caused the accident." *Id.* 117 Cal.Rptr. at 66, 527 P.2d at 618.

The court summarized its analysis by stating that "if the proximate cause is of industrial origin, the time and place of injury or death even if foreign to the premises does not serve to nullify recovery." *Id.* 117 Cal.Rptr. at 67, 527 P.2d at 619.

## II.

With regard to the rulings of law made by the Commission, I have one major disagreement. First, the Commission did not have the benefit of our decision in *Grant v. Brownfield's Orthopedic & Prosthetic,* 105 Idaho 542, 671 P.2d 455 (1983), when it issued its decision in the instant case. Had the Commission had the benefit of *Grant* when deciding *Snyder,* I am convinced the result would have been different.

In *Grant, supra,* we went to great lengths in our analysis of the "in the course of employment" requirement for death or accident benefits. Our analysis began with Larson, *Workmen's Compensation Law,* § 22.00 on recreational and social activities and related sections. We also examined pertinent case law on the issue of "in the course of employment." After careful scrutiny of the factors to be considered, including employer sponsorship, voluntariness of attendance, benefits to the employer and employee, and the premises rule, we concluded that the claimant in *Grant* was entitled to benefits arising from the death of his wife at a Christmas party sponsored by her employer.

Our analysis in *Grant* is applicable here. And in this case because the party was held on the employer's premises there is a stronger argument for awarding death benefits to the claimant than in *Grant.* Here the attendance was voluntary as in *Grant,* although sponsorship was joint in that both the employer and employees contributed to the financing of the event, nevertheless, the employer did contribute financially to the party. Furthermore, benefits were obtained by both the employees and the employer in promoting good working relations among the employees. These factors combined with the proximate cause of the death being on the premises support that

the death was in the course of employment and that claimant might be entitled to benefits under the Worker's Compensation law of this state. I believe the instant case should be remanded for a new hearing in light of the rules of law set forth in *Grant.*

Finally, I am most troubled by this Court's novel proposition of law which reads: "On appeal, the facts and all inferences therefrom must be viewed most favorably to the party who prevailed below." The majority cites as authority two cases, *Higginson v. Westergard,* 100 Idaho 687, 604 P.2d 51 (1979), and *Matter of Webber's Estate,* 97 Idaho 703, 551 P.2d 1339 (1976), neither of which has anything to do with Workmen's Compensation law. *Higginson* was a case where the Department of Water Resources brought an action to compel a property owner to remove a dike allegedly interfering with the flow of a river adjacent to his property. And *Webber's Estate* involved a dispute over a holographic will. The majority today is attempting to surrupticiously undermine the objectives of the Workmen's Compensation law in Idaho by inserting into opinions like this, rules of law which directly contravene the tone and purpose of the Workmen's Compensation law. Such bastardization of the Workmen's Compensation law is alarming.

## ON DENIAL OF PETITION FOR REHEARING

BISTLINE, Justice, dissenting.

In his petition for rehearing and supporting brief, counsel for the claimant-appellant (hereinafter counsel) gave the majority ample reason to correct the mistakes which mar the Court's opinion. The record clearly reveals the Industrial Commission's confusion with the underlying facts. Repeatedly it refers to Mr. Burl Lange and Burl Lange, Inc. as if they were but a single entity—which they were not: the distinction is more than academic. While, as the Commission found, Mr. Lange, the individual, or the president, may not have authorized the sale of the company's batteries to finance the party, corporate main-

tenance foreman Robert Hendren did. Mr. Lange conceded that Hendren, an employee of and agent for the corporation, possessed authority to dispose of the batteries, and to make expenditures for the corporation.

It also may be true that Mr. Lange, in whatever capacity, did not expressly authorize the party. However, Hendren and other employees did so and arranged for it to take place on company premises *and during company time.* A similar party had taken place the preceding year. Mr. Lange acquiesced in all of this by permitting the event, and thereafter attending it. As counsel aptly asks, "Does Lee Iacocca have to approve of and attend a Chrysler Corporation Christmas party for it to be a company sponsored party?" The reality is that the *company* Lange, if not the person Lange, sponsored the ill-fated event. The Commission may be due some deference in its findings of fact, but this deference should not extend to this Court attaching itself to findings made in disregard of the corporate agency.

As I had done in my dissenting opinion, counsel correctly point out that the Commission made these muddled findings and its errant decision without the benefit of *Grant v. Brownfield's.* There we determined what "work connection" between a Christmas party and an employee's employment and subsequent death was necessary to determine whether the death arose out of and occurred during the course of employment. Despite its reliance on a Massachusetts case which this Court cited in *Grant,* the findings of the Commission fell far short of developing the facts sufficient under the test set out in *Grant* to substantiate a finding that the incident was outside the course and scope of employment. The majority opinion's assertion that *Grant* was "easily distinguishable" was premature at best. A proper disposition of this case would be to remand to the Commission for reconsideration in light of *Grant,* and let it be the first to make the findings.

Such a procedure would allow the Commission to further examine the employer's sponsoring and financing of the party.

The Commission also could further explore the company encouragement of attendance at the party and the employees' regard of the party as an employment benefit or obligation to which they were entitled or required, and whether the employer might expect to benefit from an event which provided the opportunity to make speeches and give awards—all of which would presumably be expected to foster better employee relations. The record contains enough information on these factors—for example, the fact that the employees used the event to present corporate president Lange and his wife with gifts—to demonstrate that at the least further factual development is called for.

Finally, counsel points out the ordinary rule that worker's compensation laws be construed liberally in favor of the claimant. By inventing a rule new to worker's compensation cases that "the facts and all inferences therefrom must be viewed favorably to the party who prevailed below," the majority risks thwarting the benefit of doubt due this claimant and all claimants. The Commission's findings of fact are to be upheld so long (but only so long) as they are supported by substantial competent evidence. This Court owes claimants at the least a fair and full examination of the evidence presented to the Commission.

This case affords the perfect example of an important case where a rehearing should not be perfunctorily denied. The Commission materially misconceived the facts related to the nature of the fateful party, and the majority issuing the Court's opinion perpetuates the misconception notwithstanding that there is good reason to believe that a just determination of this claim has yet to made.